PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3926
_____

VICTOR JAIR AGUILAR,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A046-981-570)
Immigration Judge: Honorable Walter A. Durling
_____

Argued
September 13, 2011

Before: RENDELL, JORDAN and BARRY, *Circuit Judges*.

(Filed November 29, 2011)
_____

Wayne P. Sachs   [ARGUED]
1518 Walnut Street – Ste. 702
Philadelphia, PA   19102
        *Counsel for Petitioner*

Eric H. Holder, Jr.
Thomas W. Hussey
Rebecca H. Phillips   [ARGUED]
Ann C. Varnon
United States Department of Justice
Office of Immigration Lit., Civ. Div.
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Victor Aguilar petitions for review of a decision of the Board of Immigration Appeals ("BIA") ordering that he be removed because he was convicted of "sexual assault" under 18 PA. CONS. STAT. § 3124.1 ("§ 3124.1"), which the BIA determined was a crime of violence under 18 U.S.C. § 16(b) ("§ 16(b)"), and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). Aguilar asserts that crimes involving a minimum *mens rea* of recklessness cannot be crimes of violence under § 16(b). Accordingly, he argues that, because the minimum *mens rea* necessary for conviction under § 3124.1 is recklessness, the BIA erred in finding that his conviction constituted a crime of violence under § 16(b). Contrary to Aguilar's assertion, however, our precedent does not foreclose the possibility that a reckless crime can be a crime of violence under § 16(b). Because sexual assault, as defined by § 3124.1, raises a substantial risk that the perpetrator will intentionally use force in furtherance of the offense, we agree with the BIA that it constitutes a crime of violence under § 16(b). We will therefore deny Aguilar's petition.

## I.    Background

In 2000, Aguilar, a native and citizen of Honduras, was admitted to the United States as a lawful permanent resident. Four years later, in the Court of Common Pleas of Berks County, Pennsylvania, he was found guilty of both sexual assault, a second degree felony, under § 3124.1,[1] and

---

[1] Section 3124.1 makes it an offense to "engage[] in

3

indecent assault, a second degree misdemeanor, under 18 PA. CONS. STAT. § 3126(a)(2). He was sentenced to a term of imprisonment of forty-six months to eight years, followed by two years of probation. In that same proceeding, the jury found Aguilar not guilty of rape under 18 PA. CONS. STAT. § 3121(a)(1).[2] Based on those felony and misdemeanor convictions, the Department of Homeland Security ("DHS") issued Aguilar a Notice to Appear, charging him as removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), because he had been convicted of a crime of violence under § 16(b) and hence an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(F).[3]

---

sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 PA. CONS. STAT. § 3124.1.

[2] Pursuant to 18 PA. CONS. STAT. § 3121(a)(1), "[a] person commits a felony of … first degree [rape] when the person engages in sexual intercourse with a complainant … by forcible compulsion."

[3] The definition of "aggravated felony" includes "a crime of violence (as defined in [§ 16], but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). The Notice to Appear also charged Aguilar as removable under 8 U.S.C. § 1227(a)(2)(A)(i), for having been convicted of a crime involving moral turpitude within five years of his admission, for which a sentence of at least one year or longer may be imposed. However, neither the Immigration Judge nor the BIA addressed that charge because both found that Aguilar's sexual assault conviction under § 3124.1 provided a ground for his removal under 8 U.S.C. § 1227(a)(2)(A)(iii). Thus,

Section 16(b) defines a "crime of violence" as "any other offense [not described in § 16(a)[4]] that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). In an "Interlocutory Ruling on Aggravated Felony," the Immigration Judge ("IJ") "sustain[ed] the aggravated felony ground of removal under [8 U.S.C. § 1227(a)(2)(A)(iii)]." (AR at 86.) The IJ held that, since "[t]he confrontation inherent in engaging in non-consensual sexual or deviant intercourse" creates a substantial risk that physical force may be used in the course of committing the offense, sexual assault under § 3124.1 is a crime of violence under § 16(b). (*Id*.) The IJ reasoned that, although § 3124.1 "cover[s] those occasions where a victim is compelled to engage in sexual intercourse or deviant sexual intercourse without consent even where no force was applied," (AR at 85), § 16(b) can nevertheless cover offenses under § 3124.1 because § 16(b) only requires "a substantial risk that physical force may be used against the person in the course of committing the offense," (AR at 86).

Aguilar appealed to the BIA. Like the IJ, the BIA reasoned that "even if the intercourse required by [§ 3124.1]

---

although Aguilar's convictions may well qualify as crimes involving moral turpitude, that issue is not before us.

[4] Section 16(a) defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a).

is accomplished without physical force or physical resistance, the offense of penetrating another person without [that person's] consent necessarily disregards the substantial risk of physical force being used to actually overcome the victim's lack of consent." (AR at 4.) Thus, the BIA dismissed the appeal.

Aguilar has timely petitioned us for review.

## II.    Jurisdiction and Standard of Review

Pursuant to 8 U.S.C. § 1252(a), we have jurisdiction to consider "'questions of law raised upon a petition for review,' including petitions for review of removal orders based on aggravated felony convictions."[5] *Tran v. Gonzales*, 414 F.3d 464, 467 (3d Cir. 2005) (quoting 8 U.S.C. § 1252(a)(2)(D)). Since the interpretation of criminal provisions "is a task outside the BIA's special competence and congressional delegation … [and] very much a part of this Court's competence," our review is *de novo*. *See id.* (noting that *de novo* review is appropriate in the context of interpreting the criminal provisions of Title 18 of the United States Code).

---

[5] The IJ had jurisdiction over Aguilar's original removal proceeding pursuant to 8 U.S.C. § 1229a, and the BIA, in turn, had jurisdiction to consider Aguilar's appeal pursuant to 8 C.F.R. § 1003.1(b)(3).

## III. Discussion

### A. *The Categorical Approach*

This case requires us to interpret the meaning and application of the type of aggravated felony defined by statute as a "crime of violence." *See Singh v. Ashcroft*, 383 F.3d 144, 150 (3d Cir. 2004) (noting that whether a petitioner has been convicted of an aggravated felony "turns on a question of statutory interpretation"). First, we must ascertain the definition of a "crime of violence" under the enumerating statute, 8 U.S.C. § 1101(a)(43)(F), which incorporates § 16(b) by reference, and second, we must compare that federal definition to the statute of conviction, namely sexual assault under § 3124.1. *Restrepo v. Att'y Gen. of the U.S.*, 617 F.3d 787, 791 (3d Cir. 2010). Case law refers to this kind of analysis as the "categorical approach" to determining whether a state law conviction constitutes an aggravated felony under federal law. *Taylor v. United States*, 495 U.S. 575, 601 (1990). Applying the categorical approach, "we look to the elements of the statutory state offense, not to the specific facts [of the case], reading the applicable statute to ascertain the least culpable conduct necessary to sustain conviction under the statute." *Denis v. Att'y Gen. of the U.S.*, 633 F.3d 201, 206 (3d Cir. 2011) (citations and internal quotation marks omitted).[6]

---

[6] The categorical approach will not always suffice. "Where … a statute criminalizes different kinds of conduct, some of which would constitute [aggravated felonies] while others would not," we turn to a modified categorical approach, under which we "may look beyond the statutory elements to determine the particular part of the statute under

B.    *Crime of Violence*

The question before us is whether sexual assault under § 3124.1, which has a minimum *mens rea* of recklessness,[7] is a crime of violence under § 16(b).  Aguilar argues that it is not, because he reads our precedent as barring any crime that can be committed recklessly from qualifying as a § 16(b) crime.  The government argues that, notwithstanding the possibility that § 3124.1 may be violated recklessly, "sexual assault," as defined by that statute, is a crime of violence under § 16(b) because it creates a substantial risk that force may be used.  The preliminary issue, then, is whether, under

which the defendant was actually convicted."  *Denis*, 633 F.3d at 206 (citation omitted).  Here, however, the categorical approach is sufficient because, as is set forth in detail herein, § 3124.1 criminalizes only behavior that qualifies as an aggravated felony.  Thus, we will confine our review to the fact of conviction and the statutory definition of the offense. *Oyebanji v. Gonzales*, 418 F.3d 260, 262 (3d Cir. 2005) (citing *Taylor*, 495 U.S. at 602).

[7] Section 3124.1 does not have an explicit *mens rea* requirement.  When a statute is silent as to the level of *mens rea* required to establish a material element of an offense, Pennsylvania law provides that "such element is established if a person acts intentionally, knowingly or recklessly with respect thereto."  18 PA. CONS. STAT. § 302(c).  Regarding the *mens rea* required to convict Aguilar of sexual assault, the trial judge instructed the jury that they must find "that the defendant acted knowingly or at least recklessly regarding [the complainant's] nonconsent."  (AR at 180.)

our precedent, the fact that a crime can be committed with a *mens rea* of recklessness necessarily disqualifies it from being a crime of violence under § 16(b). We conclude that reckless crimes can be crimes of violence under § 16(b) because, under the terms of the statute and applicable case law, the focus must be on the risk of the intentional use of force, not merely on *mens rea*, as Aguilar urges. However, as the relevant precedents are nuanced and deserving of discussion, we will review them first and apply the proper test to the crime at issue, before turning to cases examining similar crimes, which have consistently been held to be crimes of violence.

### 1. *Recklessly Committed Crimes can be Crimes of Violence under § 16(b)*

As already noted, § 16(b) provides that a crime of violence is "any other offense [not described in § 16(a)[8]] that is a felony and that, by its nature, involves a substantial risk

---

[8] As the government concedes, § 16(a) is not at issue in this case because § 3124.1 does not require a showing of force and thus does not fall within § 16(a). As pointed out earlier, § 16(a) defines a crime of violence as those offenses that have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). Section 16(b), however, was crafted to include crimes that, by their nature, involve a *substantial risk* that physical force *may* be used in the course of committing the offense. *See* 18 U.S.C. § 16(b). Thus, § 16(b) is broader than § 16(a), *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004), because it does not require that force be an element of the crime, *see* 18 U.S.C. § 16(b).

9

that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). *Mens rea* is not featured in that definition, but both the Supreme Court and our court have considered *mens rea* when determining what constitutes a crime of violence under § 16(b). Under those precedents, crimes involving a *mens rea* of negligence or of a variant of recklessness that we have called "pure" recklessness have been held not to be crimes of violence under § 16(b) because, by their nature, they do not raise a substantial risk that physical force may be used. *E.g.*, *Tran*, 414 F.3d at 465; *see Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004). Those precedents, however, do not foreclose all crimes with a *mens rea* of recklessness from qualifying as crimes of violence. Although the mental state necessary to satisfy the substantive elements of a crime may have a bearing on the "substantial risk" inquiry required by § 16(b), a reckless *mens rea* does not necessarily dictate that a crime falls outside of § 16(b). Case law instead follows the plain language of § 16(b) and focuses on whether the crime, by its nature, raises a substantial risk that force may be used. Thus, a crime that can be committed recklessly may still qualify as a crime of violence under § 16(b) if that crime, by its nature, raises such a risk.

In *Leocal v. Ashcroft*, the Supreme Court held that a Florida DUI offense[9] is not a crime of violence under § 16(b) because "[i]n no 'ordinary or natural' sense can it be said that

_____

[9] The DUI statute in *Leocal* "ma[de] it a third degree felony for a person to operate a vehicle while under the influence and, 'by reason of such operation, caus[e] … [s]erious bodily injury to another.'" 543 U.S. at 7 (quoting FLA. STAT. § 316.193(3)(c)(2)).

10

a person risks having to 'use' physical force against another person in the course of operating a vehicle while intoxicated and causing injury." 543 U.S. at 11. The Court reasoned that § 16(b):

> covers offenses that *naturally involve* a person acting in *disregard of the risk that physical force might be used* against another in committing an offense. The *reckless disregard* in § 16 relates *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime.

*Id.* at 10 (emphasis added). Though the Court held that § 16(b) "require[s] a higher *mens rea* than the merely accidental or negligent conduct involved in a DUI offense," *id.* at 11, it did so in light of its suggestion that the nature of the DUI crime itself, not the particular *mens rea* associated with the crime, was key in assessing the substantial risk required by § 16(b), *see id.* ("In no 'ordinary or natural' sense can it be said that a person risks having to 'use' physical force against another person in the course of operating a vehicle while intoxicated and causing injury."). Moreover, while the Court explicitly noted that it was not considering "whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16," *id.* at 13, it at least implied that it could qualify. Indeed, by specifically emphasizing that the "disregard" in § 16(b) is a "*reckless* disregard*," *Leocal* supports the conclusion that crimes that

11

can be committed recklessly may sometimes be "crimes of violence." Thus, the takeaway from *Leocal* is its instruction to focus the § 16(b) analysis on whether the crime, by its nature, raises "a substantial risk" of "the use of force," *id.* at 10 n.7, and not on the crime's *mens rea*.

After *Leocal*, we held in *Tran* that the crime of reckless burning or exploding[10] was not a crime of violence under § 16(b). 414 F.3d at 465. As the Supreme Court did in *Leocal*, we focused on whether the crime, by its nature, raised "a substantial risk that the actor will *intentionally* use force in

---

[10] The Pennsylvania crime of reckless burning or exploding provides as follows:

A person commits a felony of the third degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and thereby recklessly:

> (1) places an uninhabited building or unoccupied structure of another in danger of damage or destruction; or

> (2) places any personal property of another having a value that exceeds $5,000 or if the property is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle in danger of damage or destruction.

18 PA. CONS. STAT. § 3301(d).

the furtherance of the offense." *Id.* at 471. We concluded that the substantial risk involved in the crime of reckless burning or exploding is "the risk that the fire started by the offender will spread and damage the property of another," which "cannot be said to involve the intentional use of force." *Id.* at 472.

In our analysis, we noted that a crime like reckless burning or exploding, for which the *mens rea* is "pure" recklessness, could not be a crime of violence under § 16(b). *Id.* at 465. "Pure" recklessness, which we had defined in *United States v. Parson*, exists when the *mens rea* of a crime "lack[s] an intent, desire or willingness to use force or cause harm at all."[11] 955 F.2d 858, 866 (3d Cir. 1992), *abrogated on other grounds by Begay v. United States*, 553 U.S. 137 (2008).[12] Thus, while discussing "pure" recklessness in *Tran*,

---

[11] *Parson* provided the following examples of "pure" recklessness:

> [A] parent who leaves a young child unattended near a pool may risk serious injury to the child, but the action does not involve an intent to use force or otherwise harm the child. Similarly, a drunk driver risks causing severe injury to others on the road or in the car, but in most cases he or she does not intend to use force to harm others.

955 F.2d at 866.

[12] In *Parson*, we held that a reckless endangering conviction was a crime of violence under § 4B1.2(a) of the federal sentencing guidelines. 955 F.2d at 860. In 2008, the Supreme Court decided *Begay*, which held that a DUI

13

we again focused the inquiry on whether the crime itself "involve[d] any risk of intentional harm or use of force." 414 F.3d at 471. We contrasted the "pure" recklessness crime of reckless burning or exploding with the crime of burglary, the "classic example" of a crime covered by § 16(b). *Id.* at 472 (quoting *Leocal*, 543 U.S. at 10). We noted that "[a] burglary would be covered under § 16(b) *not because the offense can be committed in a generally reckless way* or because someone may be injured, but *because burglary, by its nature, involves a substantial risk that the burglar will use force* against a victim in completing the crime."[13] *Id.* (quoting *Leocal*, 543 U.S. at 10) (emphasis added). Thus, as it had been in *Leocal*,

---

conviction under New Mexico law did not fall within the definition of a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), since violent felonies were limited to offenses which "typically involve purposeful, violent, and aggressive conduct." 553 U.S. at 144-45 (citation and internal quotations marks omitted). Post-*Begay*, we have held that "a conviction for mere recklessness cannot constitute a crime of violence" under the federal sentencing guidelines. *United States v. Lee,* 612 F.3d 170, 195-97 (3d Cir. 2010).

Though *Parson* was abrogated by *Begay* to the extent that *Begay* held that a conviction of "mere recklessness" cannot constitute a crime of violence under the federal sentencing guidelines, *Parson*'s use of the term "pure" recklessness in the context of §16(b) was not overruled by *Begay* and is still relevant to our inquiry in this case.

[13] "[T]he 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct. …" *Tran*, 414 F.3d at 472 (quoting *Leocal*, 543 U.S at 10 n.7).

the focus in *Tran* was on whether the crime, by its nature, raises the risk of the use of physical force – not on the *mens rea* requirement in the statute of conviction.

Like *Leocal*, *Tran* supports our conclusion that some crimes with a minimum *mens rea* of recklessness can constitute crimes of violence under § 16(b). *Tran* teaches that there is a subset of reckless crimes – those committed with "pure" recklessness – that do not fit under § 16(b) for the very reason that the perpetrator runs "no risk of intentionally using force in committing his crime." 414 F.3d at 465. *Tran* thereby implicitly recognizes that, when such a risk does exist, the crime does fall within § 16(b). The discussion in *Tran* concerning burglary, the same "classic [§ 16(b)] example" cited in *Leocal*, also suggests that some crimes that can be committed recklessly will qualify as crimes of violence under § 16(b). Under common law, burglary is a specific intent crime, *see Parson*, 955 F.2d at 868, the intent being to break and enter a dwelling at night to commit a felony, BLACK'S LAW DICTIONARY 211 (8th ed. 2004). But for § 16(b) purposes, what is enlightening is not the *mens rea* associated with the breaking and entering. It is rather the risk of confrontation, a risk that may be only recklessly undertaken. As *Tran* says, a "burglar has a mens rea legally nearly as bad as a specific intent to use force, for he or she recklessly risks having to [use force]" if the occupants of the dwelling are confronted. 414 F.3d at 471 (quoting *Parson*, 955 F.2d at 866).

Accordingly, *Leocal* and *Tran* teach that crimes carrying a *mens rea* of recklessness may qualify as crimes of violence under § 16(b) if they raise a substantial risk that the perpetrator will resort to intentional physical force in the

15

course of committing the crime. Despite that, Aguilar asserts that our post-*Tran* decisions undermine that conclusion. The decisions he relies on, however, are distinguishable.

First, in *Popal v. Gonzales*, we held that misdemeanor simple assault under Pennsylvania law was not a crime of violence under § 16. 416 F.3d 249, 251 (3d Cir. 2005). In so holding, we stated that we "ha[d] recently held that crimes with a *mens rea* of recklessness do not constitute crimes of violence." *Id.* (citing *Tran*, 414 F.3d at 464). However, as Aguilar concedes in his brief, only § 16(a) was at issue in *Popal* because the simple assault was not a felony, and thus could not qualify under § 16(b). 416 F.3d at 254. Therefore, any discussion of § 16(b) was "not essential to the decision" in that case, and, as such, is dicta.[14]

Second, in *Henry v. Bureau of Immigration & Customs Enforcement*, we held that the crime, under New York law, of possessing a loaded firearm with intent to use the same unlawfully against another, was a crime of violence under § 16(b). 493 F.3d 303, 305-07 (3d Cir. 2007). We noted that "[i]n *Tran*, decided after *Leocal*, we reaffirmed our precedent from [*Parson*], which held that … a reckless state of mind [does not] suffice to satisfy the requirements of §16(b)." *Id.* at 307. However, since the part of the statute of conviction to which Henry pled guilty could only have been accomplished intentionally, our commentary in *Henry* on the *mens rea* of recklessness is, again, dicta, because we were deciding if an *intentionally* committed crime was a crime of violence under

---

[14] We "can, of course, accord dicta as much weight as we deem appropriate." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 274 (3d Cir. 2007) (citation omitted).

§ 16(b) and did not need to consider the reckless *mens rea* analysis from *Tran*.[15]

Third, in *Oyebanji v. Gonzales*, we held that the crime of vehicular homicide under New Jersey law is not a crime of violence under § 16(b). 418 F.3d at 264. Since that crime "is a form of reckless driving that causes death," we found that "*Leocal*'s reasoning seems to suggest that [vehicular homicide] is excluded from the category of crimes of violence." *Id.* We equated the "reckless conduct" required for vehicular homicide with the "accidental conduct" referenced in *Leocal*'s analysis of the Florida DUI offense, *id.* at 263-64, and specifically noted that "[i]nterpreting § 16 to encompass *accidental* or negligent conduct would blur the distinction" between those lower *mens rea* offenses and the "'violent' crimes Congress sought to" be subsumed under § 16(b) for "heightened punishment," *id.* at 264 (quoting *Leocal*, 543 U.S. at 11). Thus, the type of recklessness that the *Oyebanji* court found not to qualify under § 16(b) – the type required for vehicular homicide – only raised a substantial risk that accidental, not intentional, force would be used. That position is similar to the one taken in *Tran* and holds open the possibility that recklessly committed crimes that create something more than the risk of the accidental use

---

[15] Notably, *Henry* re-affirmed the *Tran* holding that "'§ 16(b) crimes are those raising a substantial risk that the actor will intentionally use force in the furtherance of the offense.'" 493 F.3d at 307 (quoting *Tran*, 414 F.3d at 471). Likewise, *Popal*'s discussion emphasizes that the focus of the § 16(b) analysis should be on whether the crime at issue "involves 'a substantial risk that the actor will intentionally use … force.'" 416 F.3d at 255 (citing *Tran*, 414 F.3d at 472).

17

of force can be crimes of violence under § 16(b). In short, *Oyebanji*'s focus on the "accidental" use of force is akin to *Tran*'s references to "pure" recklessness: it carves out a class of reckless crimes that fail to create the substantial risk of the use of force that is required by § 16(b).[16]

---

[16] Citing to various cases from our sister circuits, Aguilar argues that reckless crimes cannot be crimes of violence under § 16(b). Those cases are inapposite because they either do not involve § 16(b), or a similarly worded statute, or they do not create the same inherent substantial risk that force will be used, as § 3124.1 does. *See Jimenez-Gonzalez v. Mukasey*, 548 F.3d 557, 561 (7th Cir. 2008) (holding that a felony of criminal recklessness was not a crime of violence under § 16(b) because it "does not require *any* purposeful conduct" and "does not necessarily create a risk that force may be used as a means to an end during the commission of the offense"); *United States v. Zuniga-Soto*, 527 F.3d 1110, 1125 (10th Cir. 2008) (assault of a public servant did not qualify as a crime of violence under § 2L1.2(b)(1)(A)(ii) of the federal sentencing guidelines; however, that definition of a crime of violence has a provision that is substantially identical to §16(a) but does not contain any provision similar to the language of § 16(b)); *United States v. Portela*, 469 F.3d 496, 497 (6th Cir. 2006) (reckless vehicular assault was not a crime of violence under § 2L1.2(b)(1)(A)(ii) of the federal sentencing guidelines, the same statute at issue in *Zuniga-Soto*); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (misdemeanor domestic violence assault was not a crime of violence under § 16(a)); *Garcia v. Gonzales*, 455 F.3d 465, 469 (4th Cir. 2006) (assault in the second degree for recklessly causing physical injury by means of a dangerous instrument (an

18

Thus, we have never categorically foreclosed the possibility that a recklessly committed crime may be a crime of violence under § 16(b), and we will not do so here.

---

automobile) was not a crime of violence under § 16(b) because the reckless conduct only raised the risk that physical injury might occur, and not the risk that force may be used as required by § 16(b)).

Aguilar also cites to the 2008 Supreme Court decision in *Begay* to support excluding from § 16(b) crimes with a reckless *mens rea*. As discussed in footnote 12 *supra*, *Begay* held that a DUI conviction under New Mexico law did not fall within the definition of a "violent felony" under the ACCA since violent felonies are limited to offenses which "typically involve purposeful, violent, and aggressive conduct." 553 U.S. at 144-45 (internal citation and quotation marks omitted). However, a crime of violence under § 16(b) requires a different analysis than a crime of violence under the ACCA. Under the ACCA, a violent felony must create a serious potential risk of physical injury to another. Under § 16(b), the inquiry is whether the crime creates a substantial risk of the use of force while committing the offense, not a risk of injury. *Cf. Tran*, 414 F.3d at 472 ("[T]he 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct." (quoting *Leocal*, 543 U.S at 10 n.7)).

## 2. *Section 3124.1 is a Crime of Violence Under § 16(b)*

Having established that a crime with a *mens rea* of recklessness can qualify as a crime of violence under § 16(b), we must next determine whether § 3124.1 in particular fits that definition and is hence an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). Because we are persuaded by the BIA's reasoning that "the offense of penetrating another person without [that person's] consent necessarily disregards the substantial risk of physical force being used to actually overcome the victim's lack of consent," we hold that it is a crime of violence under § 16(b). (AR at 4.)

Our analysis begins with the plain language of § 16(b), which requires that for sexual assault under § 3124.1 to be a crime of violence, it must be a felony and, by its nature, raise a substantial risk that physical force may be used during the commission of the offense. 18 U.S.C. § 16(b). Because we are applying the formal categorical approach, we only look to the fact of the conviction and statutory definition of the offense.[17]

---

[17] We emphasize that we are not making any determination as to when sexual conduct becomes non-consensual intercourse and thus a crime under § 3124.1. That challenge is for Pennsylvania judges and juries to decide on a case-by-case basis. Here, a jury found Aguilar guilty of violating § 3124.1. Under the formal categorical approach, we may not look past that conviction to consider his particular conduct in the underlying criminal case. The details of what actually occurred between the victim and

Section § 3124.1, a second degree felony under Pennsylvania law, makes it an offense to "engage[] in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent."[18]  18 PA. CONS. STAT. § 3124.1.  In addition to the ordinary meaning of sexual intercourse, the statutory definitions of both "sexual intercourse" and "deviate sexual intercourse" include "intercourse per os or per anus" and "penetration."  18 PA. CONS. STAT. § 3101.

Since it is beyond dispute that sexual assault under § 3124.1 is a felony, we turn to the second requirement of § 16(b) and ask, using the template provided in *Tran*, whether non-consensual sexual intercourse, by its nature, creates a

---

Aguilar are not part of our calculus and we make no comment on them.

[18] Section 3124.1 was enacted "to fill the loophole left by the rape and involuntary deviate sexual intercourse statutes by criminalizing non-consensual sex where the perpetrator employs little if no force."  *Commonwealth v. Pasley*, 743 A.2d 521, 524 n.3 (Pa. Super. Ct. 1999).  Aguilar argues that the Pennsylvania legislature's inclusion of force as an aspect of other crimes in the subchapter, including rape and involuntary deviate sexual intercourse, strongly indicates that the legislature did not anticipate that force would be commonly used in the commission of sexual assault under § 3124.1.  The operative question, however, is not whether force will often be a feature of conduct charged under § 3124.1 but rather whether there is a *substantial risk* that force will be used in furtherance of the offense.

substantial risk that the actor will intentionally use physical force against the victim.  *See Tran*, 414 F.3d at 471 ("[W]e … conclude that § 16(b) crimes are those raising a substantial risk that the actor will *intentionally* use force in the furtherance of the offense.").  We hold that it does.

As discussed in both *Leocal* and *Tran*, burglary is a crime of violence under § 16(b) "because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime."  *Id.* at 472 (quoting *Leocal*, 543 U.S. at 10).  Just as a burglary creates a substantial risk that the burglar will have to use physical force to overcome the desire of home occupants to protect themselves and their property, so too does a sexual assault under § 3124.1, by its nature, create a substantial risk that the assailant will use physical force to overcome a victim's desire to protect his or her body from non-consensual sexual penetration.  If the risk of force created by an unlawful entry into a victim's home qualifies under § 16(b), then surely the risk of force when an offender is trying to enter a victim's body without consent must qualify as well.

It is useful for contrast to look at the risks created by the crimes at issue in *Tran* and *Leocal*.  The substantial risk involved in reckless burning or exploding, which was considered in *Tran*, "is the risk that the fire started by the offender will spread and damage the property of another. … [which is a] risk [that] cannot be said to involve the intentional use of force."  *Tran*, 414 F.3d at 472.  The offender does not have to overcome a victim.  The substantial risk involved in sexual assault under § 3124.1, however, is that, to achieve non-consensual penetration, the offender will intentionally use force to overcome the victim's natural

22

resistance against participating in unwanted intercourse. Thus, unlike the statute of conviction in *Tran*, sexual assault raises a risk that can certainly be said to involve the intentional use of force by the offender.

Sexual assault is also unlike the statute of conviction at issue in *Leocal*. The Supreme Court there determined that § 16(b) "requir[ed] a higher *mens rea* than the merely accidental or negligent conduct involved in a DUI offense," *Leocal*, 543 U.S. at 11, and concluded that a DUI offense could not be "shoehorn[ed]" into §16(b) because in no ordinary and natural sense could driving under the influence raise a substantial risk of having to use physical force against another person, *id.* at 11-13. In contrast, in an ordinary and obvious sense, an offender risks having to intentionally use physical force against a victim in the course of engaging in non-consensual sexual intercourse.[19]

_____

[19] Aguilar argues that the IJ and the BIA "both engaged in unwarranted speculation as to generalized assumptions regarding 'risk' and 'escalation' scenarios which are not categorically part of the 'course of committing the offense.'" (Appellant's Opening Br. at 8-9.) However, as the government argues, using the word "risk" in the definition of § 16(b) requires an inquiry into the probabilities of human behavior. The term "risk" is defined as "[t]he uncertainty of a result, happening, or loss; the chance of injury, damage or loss; esp., the existence and extent of the possibility of harm." BLACK'S LAW DICTIONARY 1353 (8th ed. 2004). So, although it is true that intentional physical force may not, in all cases, be used during the commission of non-consensual sexual intercourse, that is not the proper inquiry. Again, the relevant question under § 16(b) is whether there is a

23

We therefore hold that sexual assault under § 3124.1, by its nature, raises a substantial risk that an actor will intentionally use force in furtherance of the non-consensual sexual intercourse, and, accordingly, that it constitutes a crime of violence under § 16(b).

We note that, while this is an issue of first impression in our circuit, our conclusion finds ample support in decisions from several of our sister courts of appeals. In *United States v. Reyes-Castro*, the Tenth Circuit held that sexual abuse of a child under Utah law was a crime of violence under § 16(b) because "by its nature it involves a substantial risk that physical force [may be used] against the person … of another." 13 F.3d 377, 379 (10th Cir. 1993) (internal citation and quotation marks omitted). In reaching that holding, the Tenth Circuit affirmed the district court's analysis of the "role of force in crimes where lack of victim consent is an element." *Id.* The district court had analogized the statute concerning sexual abuse of a child to Utah's rape statute, which defined rape as "sexual intercourse … without the victim's consent," *id.* (citing UTAH CODE ANN. § 76-5-402(1)), a definition that is closely similar to sexual assault under § 3124.1. Because violating that rape statute was a crime that "involves a non-consensual act upon another person," the court found that "there is a substantial risk that physical force may be used in the course of committing the offense." *Id.* Thus, the court concluded that non-consensual sexual intercourse, even without physical force, would constitute a crime of violence under § 16(b). *Id.*

"substantial risk" that it will be used. Non-consensual sexual intercourse raises that risk.

24

The Fifth Circuit, in *Zaidi v. Ashcroft*, held that sexual battery, defined by statute as "intentional touching, mauling or feeling of the body or private parts of any person sixteen (16) years of age or older, in a lewd and lascivious manner and without the consent of that other person," was a crime of violence under § 16(b). 374 F.3d 357, 360-61 (5th Cir. 2004) (quoting OKLA. STAT. ANN. tit. 21, § 1123(B)). The petitioner had argued that the statute could be violated through an "intentional, but 'nonviolent,' physical touching," and thus should not qualify as a crime of violence. *Id*. at 360. The Fifth Circuit disagreed, emphasizing that, "[b]ecause the statute at issue … presupposes a lack of consent, it necessarily carries with it a risk of physical force." *Id.* at 361 (citation omitted). The court went on to say that "the non-consent of the victim is the touchstone for determining whether a given offense involves a substantial risk that physical force may be used in the commission of the offense."[20] *Id*. (citation and internal quotation marks omitted).

---

[20] Aguilar contends that *Zaidi* is factually distinguishable from his case because the statute of conviction in *Zaidi* requires intentional conduct and sexual assault only requires a *mens rea* of recklessness. As an initial matter, we find it hard to believe that sexual assault under § 3124.1 can be accomplished without *intentional* sexual penetration. Further, focusing on the act – intentional sexual penetration in sexual assault or intentional touching in *Zaidi* – confuses the issue and is not the proper focus for § 16(b). That is because neither of those acts, by themselves, raise the substantial risk of use of force that would make them crimes of violence. Indeed, they typically would not be crimes at all

In *Sutherland v. Reno*, the Second Circuit determined that the Massachusetts crime of "indecent assault and battery on a person over the age of fourteen" was a crime of violence under § 16(b). 228 F.3d 171, 173 (2d Cir. 2000) (Sotomayor, J.). Although the language of the statute of conviction did not set forth the elements of the crime, case law defined it to include a lack of consent.[21] *See, e.g.*, *Maghsoudi v. INS*, 181 F.3d 8, 15 (1st Cir. 1999) (noting that, under applicable Massachusetts law, "[l]ack of consent [i]s an element of indecent assault on a person fourteen or older"). The Second Circuit said that it was significant that the lack of consent was a required element, and the court emphasized that "the

_____

when there is consent. It is the non-consent of the victim in § 3124.1, as it was in *Zaidi*, that creates the substantial risk of use of physical force and transforms the act into a crime of violence under § 16(b).

[21] The crime encompassed:

> [a] touching ... [that] when, judged by the normative standard of societal mores, is violative of social and behavioral expectations, in a manner which is fundamentally offensive to contemporary moral values and which the common sense of society would regard as immodest, immoral, and improper. So defined the term indecent affords a reasonable opportunity for a person of ordinary intelligence to know what is prohibited.

*Id.* at 176 (quoting *Commonwealth v. Lavigne*, 676 N.E.2d 1170, 1172 (1997)).

26

existence of lack of consent by the victim … by its nature, presents a substantial risk that force *may* be used in order to overcome the victim's lack of consent and accomplish the indecent touching." *Sutherland*, 228 F.3d at 176 (internal citations and quotation marks omitted). In support of that contention, the court referenced an Eighth Circuit case, *United States v. Rodriguez*, which held:

> [T]he statutory language "may" and "substantial risk" must not be ignored. All crimes which by their nature involve a substantial risk of physical force share the *risk* of harm. It matters not one whit whether the risk ultimately causes actual harm. Our scrutiny ends upon a finding that the risk of violence is present.

979 F.2d 138, 141 (8th Cir. 1992).

Though not decided in the context of § 16(b), another case provides support for the proposition that the non-consent of the victim is a "touchstone" for determining whether an offense raises a substantial risk that force will be used during the commission of an offense. In *United States v. Rooks*, the Tenth Circuit concluded that third degree sexual assault under Texas law constituted a crime of violence under § 4B1.2(a) of the federal sentencing guidelines.[22] 556 F.3d 1145, 1152 (10th Cir. 2009). Finding the Supreme Court's decision in *Begay* instructive, the *Rooks* court concluded that "[s]exual

---

[22] Specifically, Rooks was convicted of intentionally or knowingly causing sexual penetration of a person without that person's consent. *Rooks*, 556 F.3d at 1146.

assault involving intentional penetration without consent is similar in kind as well as in degree of risk posed to the example crimes set forth in § 4B1.2(a)'s commentary." [23] *Id.* at 1150 (internal citation and quotation marks omitted). The *Rooks* court also found that "[t]he risk of confrontation, another indicator of violent and aggressive conduct, is inherent in non-consensual sexual encounters." *Id.* at 1151 (internal citation omitted).[24]

## IV. Conclusion

For the foregoing reasons, the BIA did not err in holding that Aguilar's offense was a crime of violence under § 16(b), and thus an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). We will therefore deny Aguilar's petition for review.

---

[23] The example crimes in § 4B1.2(a)'s commentary include "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S. Sentencing Guidelines Manual § 4B1.2 cmt. n.1.

[24] A crime of violence under § 16(b) and a crime of violence under § 4B1.2(a) do not have identical inquiries because the former focuses on the risk that force may be used and the latter, like the ACCA, focuses on the risk that physical injury may occur. *See Leocal*, 543 U.S. at 10 n.7. However, the analysis in *Rooks* regarding the effect of non-consensual sexual penetration is instructive to the inquiry required under § 16(b) and generally provides support for the contention that non-consensual sexual penetration is a crime of violence.