# Matter of Lennyn Dejesus TAVAREZ PERALTA, Respondent

*Decided August 1, 2013*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  An alien convicted of violating 18 U.S.C. § 32(a)(5) (2006), who interfered with a police helicopter pilot by shining a laser light into the pilot's eyes while he operated the helicopter, is removable under section 237(a)(4)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(4)(A)(ii) (2006), as an alien who has engaged in criminal activity that endangers public safety.

(2)  A violation of 18 U.S.C. § 32(a)(5) is not a crime of violence under 18 U.S.C. § 16 (2006).

FOR RESPONDENT:  Chelsea D. Germak, Esquire, Philadelphia, Pennsylvania

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Jeffrey T. Bubier, Senior Attorney; Kuyomars "Q" Golparvar, Division Chief

BEFORE:  Board Panel:  PAULEY and MULLANE, Board Members; HOFFMAN, Temporary Board Member.

MULLANE, Board Member:

In a decision dated June 21, 2012, an Immigration Judge terminated the removal proceedings against the respondent, finding that he was not removable under section 237(a)(4)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(4)(A)(ii) (2006), as an alien who has engaged in criminal activity that endangers public safety, or under section 237(a)(2)(A)(iii), as an alien convicted of an aggravated felony crime of violence.  The Department of Homeland Security ("DHS") has appealed from that decision.[1]  The respondent has filed a brief in opposition to the appeal.  The panel heard oral argument in this case on December 12, 2012.[2]

---

[1]  The Immigration Judge certified the respondent's case to the Board.  *See* 8 C.F.R. §§ 1003.1(c), 1003.7 (2012).  However, given the subsequent appeal filed by the DHS, we decline to accept the certified case for review.  Instead, we take jurisdiction over this case pursuant to the DHS appeal.  8 C.F.R. § 1003.3 (2013).

[2] Board Member Greer withdrew from the panel subsequent to oral argument and was replaced by Temporary Board Member Hoffman, who has familiarized herself with the record of proceedings, including a transcript of the oral argument.

The appeal will be sustained in part, and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the Dominican Republic whose status was adjusted to that of a lawful permanent resident on September 9, 2005. He was convicted on May 12, 2011, in the United States District Court for the Eastern District of Pennsylvania, of destruction of an aircraft or aircraft facilities in violation of 18 U.S.C. § 32(a)(5) (2006), for which he was sentenced to 18 months in prison.[3]

The facts in this case are not in dispute. Using a green laser, the respondent targeted a Philadelphia Police Department helicopter piloted by Lieutenant Anthony Ginaldi and Officer Christopher Clemens as it flew over the city of Philadelphia. The respondent successfully directed the laser at the eye of Lieutenant Ginaldi, and the pain and discomfort from the laser caused him to momentarily lose control of the helicopter. According to the conviction records, "When Lieutenant Ginaldi lost control of the aircraft due to the laser strike to his eye, the aircraft banked to the side into an unsafe flying position until Officer Clemens took over the controls and regained control of the aircraft, returning it to a safe flying position." After the officers regained control of the aircraft, they attempted to locate the source of the laser and discovered the respondent. The respondent continued to target the helicopter with the laser and even struck Lieutenant Ginaldi in the eye a second time.

Lieutenant Ginaldi subsequently described the incident as follows: "Imagine being alive for a couple of seconds and knowing you're going to crash to the ground and die . . . . There's no place to hide and no place to go . . . but down." Ginaldi was also concerned about what his helicopter

---

[3] According to 18 U.S.C. § 32, which is entitled "Destruction of aircraft or aircraft facilities":

> (a)  Whoever willfully—
>   . . .
>     (5)  interferes with or disables, with intent to endanger the safety of any person or with a reckless disregard for the safety of human life, anyone engaged in the authorized operation of such aircraft or any air navigation facility aiding in the navigation of any such aircraft . . .
>   . . .
> shall be fined under this title or imprisoned not more than twenty years or both.

The term "aircraft" is defined at 18 U.S.C. § 31(a) (2006) as "a civil, military, or public contrivance invented, used, or designed to navigate, fly, or travel in the air."

would hit when it reached the ground. Fortunately, the copilot was able to take over but, according to Ginaldi, this would not have been the case if he was piloting a single pilot helicopter. Lieutenant Ginaldi stated that he was incapacitated for 10 hours, temporarily lost forward vision, experienced tearing in his eyes, and could not drive home.

The DHS charged the respondent with removability under section 237(a)(4)(A) of the Act, which provides in pertinent part:

> Any alien who has engaged, is engaged, or any time after admission engages in—
>
>     . . .
>     (ii) any other criminal activity which endangers *public safety or* national security . . .
>     . . .
> is deportable.

(Emphasis added.) The DHS also charged that the respondent is removable under section 237(a)(2)(A)(iii) of the Act as an alien convicted of an aggravated felony, specifically, a crime of violence under 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (2006).

## II. ISSUES

The first issue in this case is whether the respondent, who was convicted of violating 18 U.S.C. § 32(a)(5) because he interfered with a pilot who was engaged in the authorized operation of a police helicopter by shining a laser light into the pilot's eyes, is removable under section 237(a)(4)(A)(ii) of the Act as an alien who engaged in "criminal activity which endangers public safety" after admission. The second issue is whether the respondent is removable under section 237(a)(2)(A)(iii) as an alien convicted of an aggravated felony crime of violence under section 101(a)(43)(F).

## III. ANALYSIS

### A. Section 237(a)(4)(A)(ii) of the Act

In construing the language of section 237(a)(4)(A)(ii) of the Act, we must give meaning to all parts of the statutory provision so that no phrase or word is rendered superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a 'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))). At the same time,

we also must not read any word or phrase so broadly that it would render other parts of the statute superfluous.

Notwithstanding the respondent's contentions, we conclude that when properly construed, section 237(a)(4)(A)(ii) includes the circumstances of the respondent's crime. On its face, this section provides for the removal of any alien who engages in "criminal activity which endangers public safety or national security." Thus, although there need not be a conviction, the alien's conduct must be criminal—meaning it is in violation of State or Federal criminal law.[4] In addition, the conduct must involve either "public safety" or "national security."

In this case, the DHS contends that the respondent has engaged in criminal activity that endangers public safety. It recognizes that "public safety" is a potentially sweeping concept and that the Act provides no definition or limiting factors for what "any other criminal activity which endangers public security" means in the context of removal proceedings. We agree that the phrase is ambiguous in defining the scope of criminal conduct that is covered by section 237(a)(4)(A)(ii) because it is not tied to a conviction or to conduct that is proscribed by any specific criminal statute.

We construe the phrase "endangers the public safety" narrowly. It does not, in our view, cover typical single-victim crimes such as rape and murder, notwithstanding the seriousness of such offenses. Indeed, the DHS acknowledges that such crimes are outside the scope of section 237(a)(4)(A)(ii), because it would subsume most, if not all, of the offenses specified in section 237(a)(2)(A) of the Act. The type of criminal activity that endangers "public safety" should be limited to actions that place a large segment of the general population at risk, rather than just a single victim. Stated another way, it is not meant to include "everyday" crimes, even serious ones like murder and rape, and even though the public safety—in the broadest sense—is implicated. We therefore hold that the phrase "criminal activity which endangers public safety" is limited to those situations where the public at large is endangered.[5]

---

[4] Although the respondent was convicted of violating 18 U.S.C. § 32(a)(5), because that ground of removal does not require a conviction, we conclude that the categorical approach is inapplicable and does not limit the evidence that may be used to determine the nature of his "criminal activity." *See Nijhawan v. Holder*, 557 U.S. 29 (2009).

[5] Our interpretation is consistent with the legislative history accompanying the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, which revised the grounds of deportation in former section 241(a) of the Act, 8 U.S.C. § 1251(a) (1988), including the grounds currently at section 237(a)(4). *See* H.R. Rep. No. 100-882 at 44 (1988) (stating that "society is adequately protected from criminals under the moral turpitude and drug grounds for deportation, and . . . it is not necessary to make aliens who commit minor criminal offenses . . . deportable.").

We agree with the DHS that in determining what criminal conduct is included in section 237(a)(4)(A)(ii) of the Act we should assess the "totality of the circumstances" surrounding the offense. This would include the extent and character of the potential harm and the facts and circumstances underlying the criminal activity.

The respondent's crime squarely falls within the scope of section 237(a)(4)(A)(ii) because a helicopter crash over a large city like Philadelphia would put many lives at risk and would thus endanger the public safety. Indeed, Congress is clearly aware that laser beams pointed at pilots operating an aircraft create a risk to public safety because it recently enacted a statute making it a felony to aim the beam of a laser pointer at an aircraft. 18 U.S.C. § 39A (2006); *see also* Internet Spyware (I-SPY) Prevention Act of 2007, and the Securing Aircraft Cockpits Against Lasers Act of 2007: Hearing on H.R. 1525 and H.R. 1615 Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary, 110th Cong. 13 (2007) (statement of Rep. Ric Keller) ("[I]t is only a matter of time before one of these laser beam pranksters ends up killing over 200 people in a commercial airline crash.").

In addition to the obvious public safety risk associated with a helicopter crash in a large city, there is also a public safety concern about future crashes that can be caused by someone with a laser. The respondent's conduct, and the basis for his conviction, was particularly disturbing because he targeted a police helicopter that was on a public safety mission and did so repeatedly, even after the pilot initially lost control. Multiple attempts to hit a police helicopter pilot with a laser is a crime that endangers public safety, and any reasonable reading of section 237(a)(4)(A)(ii) would include the circumstances of the respondent's crime.

The respondent argues that this provision should apply only if national security is at stake. However, section 237(a)(4)(A)(ii) provides for removability of aliens engaged in criminal activity that endangers either public safety *or* national security. According to the Supreme Court, "Canons of construction indicate that terms connected in the disjunctive [should] be given separate meanings." *Garcia v. United States*. 469 U.S. 70, 73 (1984); *see also United States v. Cruz*, 805 F.2d 1464, 1472 (11th Cir. 1986) (stating that the fact that statutory provisions are separated by the disjunctive word "or" "strongly indicat[es] that Congress construed the two to be separate and distinct"). Nothing in the statute persuades us that Congress intended to mean "and" where it said "or."

We recognize that the heading for section 237(a)(4), "Security and related grounds," makes no reference to public safety. However, "a subchapter heading cannot substitute for the operative text of the statute." *Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008). Stated another way, "[T]he title of a statute and the heading

of a section cannot limit the plain meaning of the text." *Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947); *see also Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998); *Matter of A-M-*, 25 I&N Dec. 66, 75 (BIA 2009).  Giving greater significance to the short title descriptor than the operative statutory text is not appropriate.  The reason Congress writes the statutory text is because the precise meaning of the statute cannot be conveyed through the short section heading.

The respondent's reliance on the heading to limit removability under this ground to matters involving national security is also undermined by the legislative history of the 1990 amendments to the Act.  A House of Representatives report regarding the addition of a deportation ground relating to "criminal activity which endangers public safety" stated:

> Unlike the grounds for exclusion, aliens would not be deportable on the basis of "any other unlawful activity," not specified in this paragraph, but only when such activity is criminal and endangers public safety or national security.

H.R. Rep. No. 100-882, at 44 (1988).  The heading for the inadmissibility (exclusion) ground at section 212(a)(3)(A) of the Act, 8 U.S.C. § 1182(a)(3)(A) (2006), is "Security and related grounds," the same as that of section 237(a)(4).  However, the legislative history suggests that the provision for inadmissibility covers a broader range of unlawful activity than the deportation ground, which Congress intended to limit to conduct threatening either public safety or national security.  We need not consider how broad the inadmissibility ground is in this case, because the respondent is charged under section 237(a)(4)(A)(ii).  However, it appears that the heading is of little meaning in defining the scope of the provisions.

We also disagree with the respondent that reading section 237(a)(4)(A)(ii) in the context of the other provisions in section 237(a)(4) paints a "national security" gloss on the term "public safety."  Section 237(a)(4)(D) provides for the removal of aliens who participated in Nazi persecution or genocide, and section 237(a)(4)(E) relates to those who violated religious freedom while serving as foreign officials by reference to aliens described in section 212(a)(2)(G) of the Act.  Neither of these provisions can reasonably be construed as involving the security of the United States.

Although we have not previously addressed section 237(a)(4)(A)(ii) in a published case, we held in an unpublished decision that it was not an appropriate charge in a case involving a statutory rape.  The Immigration Judge relied on that decision for the proposition that this section only applies to criminal activity involving national security.  However, only published Board decisions serve as precedent.  8 C.F.R. § 1003.1(g) (2013).

Moreover, for the reasons discussed above, we conclude that the Immigration Judge misread section 237(a)(4)(A)(ii) because his construction renders the phrase "public safety" superfluous. Finally, as previously noted, the DHS does not dispute that rape is not covered by this ground of removal, and the analysis in the unpublished Board decision does not address the respondent's offense. Accordingly, we conclude that the respondent is removable under section 237(a)(4)(A)(ii) of the Act.

### B.  Section 237(a)(2)(A)(iii) of the Act

We agree with the Immigration Judge that the respondent is not removable under section 237(a)(2)(A)(iii) of the Act because his conviction is not for a "crime of violence" under 18 U.S.C. § 16 (2006) and is therefore not for an aggravated felony. Under section 101(a)(43)(F) of the Act, the term "aggravated felony" is defined as a crime of violence for which the term of imprisonment is at least 1 year. Since the respondent was sentenced to imprisonment for more than a year, the only remaining question is whether his conviction was for a crime of violence under 18 U.S.C. § 16.

A "crime of violence" is defined in 18 U.S.C. § 16 as

> (a)  an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

We first conclude that the respondent's offense under 18 U.S.C. § 32(a)(5) does not qualify as a crime of violence under 18 U.S.C. § 16(a) because it does not necessarily involve "the use, attempted use, or threatened use of physical force." The DHS does not contest this finding. Although the respondent's offense was a felony, we also conclude that it does not qualify as a crime of violence under § 16(b) because it did not involve a substantial risk that physical force against the person or property of another would be used in the course of committing the offense.

The Supreme Court addressed 18 U.S.C. § 16(b) in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), holding that it covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in the commission of a crime. The Court used burglary as an example, stating that "[a] burglary would be covered under § 16(b) *not* because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime." *Id.* at 10.

Moreover, it is not necessary that all hypothetical violations involve a substantial risk that violent force will be used in committing the offense—only that the offense, by its nature, involves such a risk. *See James v. United States*, 550 U.S. 192 (2007). The United States Court of Appeals for the Third Circuit, in whose jurisdiction this case arises, has also determined that the fact that a crime can be committed with a mens rea of recklessness does not necessarily disqualify it from being a crime of violence. The focus must be on whether the crime, by its nature, raises a substantial risk that force may be used. *Aguilar v. Att'y Gen. of U.S.*, 663 F.3d 692, 695-99 (3d Cir. 2011). However, consistent with *Leocal*, the Third Circuit has held that the type of force contemplated is violent force, not merely any force as that term might be defined under the laws of physics. *See Oyebanji v. Gonzales*, 418 F.3d 260 (3d Cir. 2005).

For purposes of this appeal, we will assume that 18 U.S.C. § 32(a)(5) is divisible. *See Descamps v. United States*, 133 S. Ct. 2276 (2013) (holding that the modified categorical approach can only be applied if the statute of conviction is divisible). The Immigration Judge correctly determined which portion of the statute the respondent was convicted under and applied the modified categorical approach to determine if the conviction was for a crime of violence under 18 U.S.C. § 16(b). The record shows that the respondent was convicted under the part of 18 U.S.C. § 32(a)(5) that makes it a Federal felony to willfully interfere with an individual engaged in the authorized operation of an aircraft with a reckless disregard for the safety of human life.

Clearly, by aiming a laser into the eyes of a police officer while he was piloting a police helicopter, the respondent placed the police officer and other people at great risk of death or injury. However, regardless of the respondent's mens rea, his actions did not constitute the use of violent physical force and did not involve a substantial risk that such force would be used against the person or property of another. As the Third Circuit has stated, "[T]he substantial risk required in 16(b) is a risk of the *use of force*, not a risk of injury to persons or damage to property." *Tran v. Gonzales*, 414 F.3d 464, 465 (3d Cir. 2005). We are not convinced by the DHS's argument that the act of shining a laser beam at the pilot was an application of the kind of physical force necessary for a crime of violence. We therefore agree with the Immigration Judge that the respondent's offense is not a crime of violence and that he is not removable under section 237(a)(2)(A)(iii) of the Act.

## IV. CONCLUSION

The respondent is removable under section 237(a)(4)(A)(ii) of the Act as an alien whose criminal activity endangered the public safety. However,

his conviction is not for an aggravated felony crime of violence. Therefore, the DHS's appeal will be sustained in part. We will remand the record to allow the respondent to apply for any relief from removal for which he may be eligible.

**ORDER:** The appeal of the Department of Homeland Security is sustained in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.