**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4476
_____

CARLTON BAPTISTE,
a/k/a Carlton Baptist,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF
AMERICA,

Respondent

_____

On Petition for Review of a Decision of the Board of
Immigration Appeals
(Immigration Judge: Margaret R. Reichenberg)
(A030-338-600)

Argued:  April 5, 2016
_____


Before:  GREENAWAY, JR., SCIRICA and RENDELL,
*Circuit Judges.*

(Filed: November 8, 2016)

Michael L. Foreman, Esq.
Penelope A. Scudder **[ARGUED]**
Pennsylvania State University
Dickinson School of Law
329 Innovation Boulevard
Suite 118
State College, PA 16802

   *Attorneys for Petitioner*



Jennifer J. Keeney, Esq.
Jesse M. Bless, Esq. **[ARGUED]**
Anthony C. Payne, Esq.
Colette J. Winston, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

   *Attorneys for Respondent*
   _____

OPINION OF THE COURT
   _____

GREENAWAY, JR., *Circuit Judge*.

Carlton Baptiste petitions for review of a decision of the Board of Immigration Appeals ("BIA") ordering his removal as an alien convicted of: (1) an "aggravated felony" pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), which is defined as, inter alia, a "crime of violence," 18 U.S.C. § 16; and (2) two or more crimes involving moral turpitude ("CIMTs") pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii).

Baptiste's petition requires us to decide whether the definition of a "crime of violence" provided in 18 U.S.C. § 16(b) is void for vagueness under the Due Process Clause of the Fifth Amendment. Section 16(b) and similarly worded statutes have come under attack in federal courts across the country after the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the so-called "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague.

Although we initially conclude that Baptiste's New Jersey second-degree aggravated assault conviction was for a crime of violence pursuant to § 16(b), we are persuaded that the definition of a crime of violence in § 16(b) is unconstitutionally vague after *Johnson*. We therefore invalidate § 16(b) and hold that Baptiste was not convicted of an aggravated felony. However, we conclude that Baptiste is nonetheless removable because he was convicted of two or more CIMTs.

Accordingly, we will grant the petition in part as it relates to the BIA's aggravated felony determination, deny the petition in part as it relates to the BIA's CIMT determination, and remand the case to the BIA for further proceedings so that Baptiste may apply for any relief from

3

removal that was previously unavailable to him as an alien convicted of an aggravated felony.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

Petitioner Carlton Baptiste is a native of Trinidad and Tobago who was admitted to the United States as a lawful permanent resident in 1972. On December 15, 1978, Baptiste was convicted of atrocious assault and battery pursuant to former N.J. Stat. Ann. § 2A:90-1 (West 1969) (the "1978 Conviction"). There is no indication from the administrative record as to the facts underlying this conviction. Baptiste was sentenced to a suspended twelve-month term of imprisonment and placed on probation for one year.

Over thirty years later, on April 8, 2009, Baptiste was convicted of second-degree aggravated assault pursuant to N.J. Stat. Ann. § 2C:12-1b(1) (West 2005) (the "2009 Conviction").[1] That statute provides that "[a] person is guilty of aggravated assault if he . . . [a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury." N.J. Stat. Ann. § 2C:12-1b(1) (West 2005). As with his earlier conviction, there is no indication

---

[1] We use the term "second-degree aggravated assault" throughout this opinion to refer to the crime defined at N.J. Stat. Ann. § 2C:12-1b(1) (West 2005).

4

from the administrative record as to the facts underlying Baptiste's 2009 Conviction. There is also no indication from the administrative record as to whether Baptiste pleaded guilty to the attempt crime in the statute, or, if he pleaded guilty to the completed crime, to which mental state in the statute Baptiste pleaded guilty to possessing—purpose, knowledge or recklessness. *See* A.R. 334. He was sentenced to a five-year term of imprisonment.

## B.    Procedural History

In June 2013, the Department of Homeland Security ("DHS") instituted removal proceedings against Baptiste. DHS asserted that, based on his 2009 Conviction, Baptiste was removable as an alien convicted of a crime of violence pursuant to 18 U.S.C. § 16 and, therefore, an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). DHS later asserted that Baptiste was also removable, based on both his 1978 Conviction and his 2009 Conviction, as an alien convicted of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct" pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). On October 8, 2013, the Immigration Judge ("IJ") sustained both charges of removability. Baptiste appealed the IJ's determinations to the BIA.

The BIA agreed with the IJ's determination that the 2009 Conviction was for a crime of violence. It reasoned that, in order to qualify as a crime of violence under § 16(b), "the nature of [a] crime . . . must be such that its commission ordinarily would present a risk that physical force would be used against the person . . . of another, irrespective of whether the risk develops or harm actually occurs." A.R. 4. Accordingly, the BIA determined that

5

"the relevant question . . . is whether the offense (whatever its *mens rea* may be) is one that inherently involves a person acting in conscious disregard of the risk that, in the course of its commission, he may 'use' physical force against the person of another." A.R. 4. Under these principles, the BIA concluded that:

> [A]n individual who undertakes to cause serious bodily injury to another under circumstances manifesting extreme indifference to human life necessarily disregards the substantial risk that in the course of committing that offense he will use physical force against another, either to effect the serious bodily injury that the statute requires or to overcome the victim's resistance or both.

A.R. 4−5.

The BIA also agreed with the IJ's determination that the 2009 Conviction was for a CIMT.[2] It examined the manner in which New Jersey courts have construed the recklessness crime in Baptiste's statute of conviction and observed that:

> New Jersey courts hold that an individual acts under circumstances manifesting an extreme indifference to the value of human life if he acts

---

[2] Baptiste did not contest before the BIA, and does not contest in his petition for review before this Court, the IJ's conclusion that his 1978 Conviction was for a CIMT.

6

with conscious awareness of the fact that his conduct bears a substantial risk that he will kill another and he conducts himself with no regard to that risk.

A.R. 5. Based on that observation, the BIA concluded that "an individual cannot form the culpable mental state and commit the culpable acts required for conviction . . . without acting in a base, vile or depraved manner and without consciously disregarding a substantial risk that he will kill another." A.R. 6.

Accordingly, the BIA dismissed Baptiste's appeal. Baptiste filed a timely petition for review with this Court on November 14, 2014.

## II.    JURISDICTION AND STANDARD OF REVIEW

The BIA had appellate jurisdiction over the IJ's order of removal pursuant to 8 C.F.R. § 1003.1(b)(3). We have jurisdiction over Baptiste's petition for review of the BIA's dismissal of his appeal pursuant to 8 U.S.C. § 1252(a)(1).

"Where, as here, the BIA issues a written decision on the merits, we review its decision and not the decision of the IJ." *Bautista v. Att'y Gen. of the U.S.*, 744 F.3d 54, 57 (3d Cir. 2014). Because an assessment of whether a crime constitutes a crime of violence pursuant to 18 U.S.C. § 16(b) implicates the criminal provisions of the U.S. Code, we exercise de novo review over the BIA's determination that the 2009 Conviction was for a crime of violence and, therefore, an aggravated felony. *Aguilar v. Att'y Gen. of the U.S.*, 663 F.3d 692, 695 (3d Cir. 2011). Similarly, we review Baptiste's due process challenge to the definition of

7

a crime of violence in § 16(b) de novo. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 595−96 (3d Cir. 2003).

Since the BIA's determination that the 2009 Conviction was for a CIMT was made in an unpublished, non-precedential decision issued by a single BIA member, we do not accord that determination any deference, and it is "[a]t most . . . persuasive authority." *Mahn v. Att'y Gen. of the U.S.*, 767 F.3d 170, 173 (3d Cir. 2014). We therefore review the BIA's CIMT determination de novo as well.

## III. ANALYSIS

### A. *Baptiste's 2009 Conviction was for a "crime of violence" under § 16(b)*

An alien who is convicted of an "aggravated felony" after his admission to the United States is removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). The term "aggravated felony" is defined as, inter alia, a "crime of violence (as defined in [18 U.S.C. § 16], but not including a purely political offense) for which the term of imprisonment [is] at least one year."[3] 8 U.S.C. § 1101(a)(43)(F). Thus, in order to determine whether Baptiste's 2009 Conviction was for an aggravated felony, we must first examine the definition of a "crime of violence" in 18 U.S.C. § 16. *Aguilar*, 663 F.3d at 695. After having "ascertain[ed] the

---

[3] Baptiste does not dispute that his 2009 Conviction was for a crime for which the term of imprisonment is at least one year.

8

definition of a 'crime of violence,'" we must then compare that definition to the statute of conviction to determine whether the applicable crime defined in the statute of conviction is categorically a crime of violence—an inquiry known as the "categorical approach." *Id.*

## 1. Definition of a "crime of violence"

A "crime of violence" is defined, in relevant part, as an offense "that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may *be used* in the course of committing the offense." 18 U.S.C. § 16(b) (emphasis added).[4] That definition requires "specific intent to use force" or, in other words, "the intentional employment of . . . force, generally to obtain some end." *Tran v. Gonzales*, 414 F.3d 464, 470−71 (3d Cir. 2005); *see Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("'[U]se' requires *active* employment." (emphasis added)). Thus, a crime of violence under § 16(b) is one that involves a substantial risk that force will be "actively employ[ed]" "in the furtherance of the offense." *Tran*, 414 F.3d at 471.

Within this framework, we have distinguished between those types of recklessness crimes that may be

---

[4] Section 16(a) alternatively defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). However, the BIA did not address this alternative statutory definition and so we similarly do not address it here. *See Li v. Att'y Gen. of the U.S.*, 400 F.3d 157, 163 (3d Cir. 2005).

9

considered crimes of violence under § 16(b) and those that may not be so considered. On the one hand, we have held that "pure" recklessness crimes are generally not crimes of violence under § 16(b). *Aguilar*, 663 F.3d at 697. Pure recklessness exists when "the perpetrator runs 'no risk of intentionally using force in committing his crime.'" *Id.* at 698 (quoting *Tran*, 414 F.3d at 465). For example, reckless burning is not a crime of violence under § 16(b) because "the risk [is] that the fire started by the offender will spread and damage the property of another," which "cannot be said to involve the intentional use of force." *Tran*, 414 F.3d at 472. Similarly, crimes that only "raise[] a substantial risk that accidental, not intentional, force [will] be used," such as reckless vehicular homicide, are not crimes of violence under § 16(b). *Aguilar*, 663 F.3d at 699. "The idea of purposeful action, of actively employing a means to achieve an end, is an essential component of both 'use' and 'intent,' and is absent from the concept of 'recklessness.'" *Tran*, 414 F.3d at 471.[5]

---

[5] The Supreme Court recently addressed the concept of "using" force in the related context of 18 U.S.C. § 922(g)(9). *See Voisine v. United States*, 136 S. Ct. 2272 (2016). Section 922(g)(9) "prohibits any person convicted of a 'misdemeanor crime of domestic violence' from possessing a firearm." *Id.* at 2276 (quoting 18 U.S.C. § 922(g)(9)). The phrase "misdemeanor crime of domestic violence" is defined "to include any misdemeanor committed against a domestic relation that necessarily involves the '*use . . . of physical force*.'" *Id.* (alteration in original) (emphasis added) (quoting 18 U.S.C. § 921(a)(33)(A)). The question before the Court was

whether reckless assaults fell within that definition. *Id.* at 2278.

In answering that question in the affirmative, the Court observed that an actor who is reckless "with respect to the harmful consequences of his volitional conduct" can "use" force within the meaning of § 921(a)(33)(A). *Id.* at 2279. To illustrate its point, the Court posited a hypothetical situation in which "a person throws a plate in anger against a wall near where his wife is standing." *Id.* "That hurl counts as a 'use' of force even if the husband did not know for certain (or have as an object), but only recognized a substantial risk, that a shard from the plate would ricochet and injure his wife." *Id.*

One need not stretch the imagination to see that applying the Court's formulation in *Voisine* to the § 16(b) context might sweep into the provision's ambit the pure recklessness and accidental force recklessness crimes described above. Both reckless burning and reckless vehicular homicide involve volitional acts "undertaken with awareness of their substantial risk of causing injury." *Id.*

However, noting "differences in [the] contexts and purposes" of § 921(a)(33)(A) and § 16, the Court went out of its way to make clear that its decision in *Voisine* "does not resolve whether § 16 includes reckless behavior." *Id.* at 2280 n.4. Since we conclude Baptiste's 2009 Conviction falls within our more-circumscribed interpretation of § 16(b), we need not examine to what extent the reasoning of *Voisine* applies in the § 16(b) context to broaden our existing interpretation of the provision. We leave that question for another day.

11

However, in contrast to those types of recklessness crimes, we have recognized that some recklessness crimes "raise a substantial risk that the perpetrator will resort to intentional physical force in the course of committing the crime" and so are crimes of violence under § 16(b). *Aguilar*, 663 F.3d at 699. In *Aguilar v. Attorney General*, we held that the Pennsylvania crime of reckless sexual assault is a crime of violence under § 16(b). *Id.* at 700−02. Although a defendant may act with a reckless state of mind in committing the offense, we observed that the defendant's actions create a "substantial risk . . . that . . . the offender will intentionally use force to overcome the victim's natural resistance against participating in unwanted intercourse." *Id.* at 702.

## 2. The categorical approach

In determining whether Baptiste's 2009 Conviction was for a crime of violence under the foregoing principles, we must use the "categorical approach" set forth by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990). The categorical approach is used in a variety of contexts to determine whether a criminal conviction meets the requirements of a federal statute triggering some form of sentencing or immigration consequence. *See Rojas v. Att'y Gen. of the U.S.*, 728 F.3d 203, 214 (3d Cir. 2013) (en banc); *see, e.g.*, *United States v. Tucker*, 703 F.3d 205, 209 (3d Cir. 2012) ("serious drug offense" requirement in the ACCA triggering sentencing enhancement); *Restrepo v. Att'y Gen. of the U.S.*, 617 F.3d 787, 791 (3d Cir. 2010) ("sexual abuse of a minor" requirement in the INA

triggering removability).  Under this approach, we do not consider the facts underlying Baptiste's conviction (*i.e.*, the conduct giving rise to his conviction).  *See Aguilar*, 663 F.3d at 695.  Instead, we "compare [the] federal definition [of a crime of violence] to the statute of conviction" itself to determine whether the applicable crime defined in the statute of conviction is categorically a crime of violence. *Id.*

The statute of conviction at issue here provides that "[a] person is guilty of aggravated assault if he . . . [a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury."  N.J. Stat. Ann. § 2C:12-1b(1) (West 2005).  The parties agree that, since the administrative record does not reveal to which crime in the statute of conviction Baptiste pleaded guilty, we should look to the recklessness crime in the statute—recklessly causing serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life.  Thus, the question we must answer is whether recklessly causing serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life is categorically a crime of violence under § 16(b).

However, the foregoing formulation begs the question:  what does it mean to say that a crime defined in a statute of conviction is *categorically* a crime of violence under § 16(b)?

Baptiste and the Attorney General advocate opposing approaches to this question.  Baptiste points us to our

13

decision in *Aguilar*, in which we observed without further exposition that only if the "*least culpable conduct* necessary to sustain conviction under [a] statute" constitutes a crime of violence can the applicable crime defined in the statute be deemed categorically a crime of violence under § 16(b). *Aguilar*, 663 F.3d at 695 (emphasis added) (internal quotation marks omitted) (quoting *Denis v. Att'y Gen. of the U.S.*, 633 F.3d 201, 206 (3d Cir. 2011)).[6] Baptiste argues that the least culpable conduct for which there is a possibility of conviction for reckless second-degree aggravated assault is drunk driving manifesting extreme indifference to the value of human life and resulting in serious bodily injury to another. *See, e.g.*, *State v. Kromphold*, 744 A.2d 640, 646 (N.J. 2000); *State v. Sweeney*, No. 12-08-1429, 2015 WL 6442334, at *1–*2 (N.J. Super. Ct. App. Div. Oct. 26, 2015). Thus, under Baptiste's view, only if that least culpable conduct meets the definition of a crime of violence in § 16(b) can the recklessness crime in his statute of conviction be deemed categorically a crime of violence pursuant to § 16(b).

The Attorney General counters that we must instead look to the conduct associated with the "ordinary case" of reckless second-degree aggravated assault—not the least culpable conduct. The ordinary case inquiry finds its roots

---

[6] Although we have not had occasion to interpret the "least culpable conduct" language in the § 16(b) context, we have interpreted it in the CIMT context to mean that "the possibility of conviction for non-turpitudinous conduct, however remote, is sufficient to avoid removal." *Jean-Louis v. Att'y Gen. of the U.S.*, 582 F.3d 462, 471 (3d Cir. 2009).

14

in the Supreme Court's opinion in *James v. United States*, 550 U.S. 192 (2007), which addressed the operation of the categorical approach in the related ACCA residual clause context. In *James*, the Court examined whether a defendant's conviction in Florida for attempted burglary fell within the ACCA residual clause definition of a "violent felony." The residual clause defines "violent felony" in relation to a list of enumerated offenses, such as burglary and extortion, as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The defendant argued that, under the categorical approach, all cases of attempted burglary under his statute of conviction had to present a serious potential risk of physical injury to another before attempted burglary could be deemed categorically a violent felony. *James*, 550 U.S. at 207.

The Court concluded that the defendant's argument "misapprehend[ed] *Taylor*'s categorical approach." *Id.* at 208. "[E]very conceivable factual offense covered by a statute" need not "necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *Id.* Rather, the Court concluded that the "proper inquiry" under the categorical approach is "whether the conduct encompassed by the elements of the offense, in the *ordinary case*, presents a serious potential risk of injury to another."[7] *Id.* (emphasis added); *see United States v. Stinson*, 592 F.3d 460, 466 (3d Cir. 2010).

---

[7] This past year, the Supreme Court re-affirmed the applicability of the ordinary case inquiry from *James* to the categorical approach in the ACCA residual clause context. *Johnson*, 135 S. Ct. at 2557. However, it later held the

15

Although *James* was decided several years before our opinion in *Aguilar*, we did not consider in *Aguilar* whether the *James* ordinary case inquiry from the ACCA residual clause context should displace the least culpable conduct inquiry in the § 16(b) context.[8]  However, since *James*, nearly all of our sister circuits have adopted the ordinary case inquiry in the § 16(b) context.  *See United States v. Vivas-Ceja*, 808 F.3d 719, 722−23 (7th Cir. 2015); *United States v. Keelan*, 786 F.3d 865, 871 (11th Cir. 2015); *United States v. Avila*, 770 F.3d 1100, 1107 (4th Cir. 2014); *United States v. Fish*, 758 F.3d 1, 13 (1st Cir. 2014); *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 854 (9th Cir. 2013); *United States v. Echeverria-Gomez*, 627 F.3d 971, 978 (5th Cir. 2010) (per curiam); *Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009); *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1213 (10th Cir. 2007).  Additionally, the BIA reached the same conclusion last

residual clause unconstitutionally vague due, in part, to the indeterminacy of the required ordinary case inquiry.  *Id.*

[8] Because *Aguilar* did not decide this question or address the Supreme Court's precedent in *James*, we may decline to use *Aguilar*'s least culpable conduct inquiry if we determine that the ordinary case inquiry is the correct analytical approach.  *See United States v. Tann*, 577 F.3d 533, 542 (3d Cir. 2009).  Moreover, the Supreme Court's recent decision in *Johnson*, in which it re-affirmed the applicability of the ordinary case inquiry, *see supra* note 7, constitutes an intervening Supreme Court decision, which is also a "sufficient basis" for us to reevaluate our precedent in *Aguilar*.  *Leb. Farms Disposal, Inc. v. County. of Lebanon*, 538 F.3d 241, 249 n.16 (3d Cir. 2008).

year.  *See In re Mario Francisco-Alonzo*, 26 I. & N. Dec. 594, 601 (B.I.A. 2015).

We are persuaded that the ordinary case inquiry is the correct analytical approach in the § 16(b) context. Section 16(b) requires courts to ask whether a crime "*by its nature*" presents a substantial risk of the use of force. Accordingly, in *Leocal v. Ashcroft*—the Supreme Court's only § 16(b) case—the Court stated that § 16(b) "covers offenses that *naturally* involve a person acting in disregard of the risk that physical force might be used against another in committing an offense."  543 U.S. at 10 (emphasis added).  As a matter of plain language, asking whether the *least culpable* conduct sufficient to support a conviction for a crime presents a certain risk is inconsistent with asking whether that crime "by its nature" or "naturally" presents that risk.  *See Perez-Munoz v. Keisler*, 507 F.3d 357, 364 (5th Cir. 2007) (noting that every violation of a state criminal statute "need not be violent" for the crime "to be a crime of violence *by its nature*" (emphasis added)); *United States v. Lucio-Lucio*, 347 F.3d 1202, 1204 n.2 (10th Cir. 2003) ("We do not take the phrase 'by its nature' as an invitation to search for exceptional cases.").

By contrast to the least culpable conduct inquiry, the Supreme Court's ordinary case inquiry is aligned with the "by its nature" inquiry that the text of § 16(b) requires. Asking whether the "ordinary case" of a crime presents a certain risk is the equivalent of asking whether that crime "by its nature" presents that same risk.  The Court's description of the ordinary case inquiry as asking whether "an offense is of a type that, *by its nature*" presents a certain

17

risk[9] demonstrates the equivalence of the two inquiries.[10] *James*, 550 U.S. at 209 (emphasis added). Accordingly, we

---

[9] Although the residual clause does not include the "by its nature" language in its text, it is clear from this statement that the Court has read the same "by its nature" requirement as exists in § 16(b) into the residual clause. *See Shuti v. Lynch*, 828 F.3d 440, 446—47 (6th Cir. 2016); *Vivas-Ceja*, 808 F.3d at 722.

[10] We are mindful that the Supreme Court used a "least of the acts criminalized" inquiry when undertaking the categorical approach in *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684−85 (2013). *See also Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015). This inquiry asks whether "a conviction of the state offense 'necessarily involved . . . facts equating to [the] generic [federal offense],'" *Moncrieffe*, 133 S. Ct. at 1684 (alterations in original) (internal quotation marks omitted) (quoting *Shepard v. United States*, 544 U.S. 13, 24 (2005)), and so we view it as synonymous with the least culpable conduct inquiry from *Aguilar*. However, we conclude that this inquiry is not applicable in the § 16(b) context.

*Moncrieffe* involved a determination of whether a predicate crime met the definition of a specific federal generic offense—"illicit trafficking in a controlled substance," *id.* at 1683; 8 U.S.C. § 1101(a)(43)(B). Other specific federal generic offenses include a "theft offense," 8 U.S.C. § 1101(a)(43)(G), "burglary offense," *id.*, and "sexual abuse of a minor," *id.* § 1101(a)(43)(A). The specific federal generic offense analysis is different in kind from the analysis required by § 16(b).

adopt the ordinary case inquiry as part of the categorical approach in § 16(b) cases.

### 3. Application of the categorical approach

Given our adoption of the ordinary case inquiry in the § 16(b) context, we now must determine how to ascertain the ordinary case of reckless second-degree aggravated assault. The first step in making this determination is defining the term "ordinary." Black's Law Dictionary defines "ordinary" as "[o]ccuring in the regular course of events," "normal," and "usual." Black's Law Dictionary 1273 (10th ed. 2014). Other circuits have defined the ordinary case in a way consistent with this definition. *See Rodriguez-Castellon*, 733 F.3d at 854 (looking to the "usual" violation of a statute); *United States v. Sonnenberg*, 628 F.3d 361, 366 (7th Cir. 2010) (looking

---

A specific federal generic offense provision requires a court to determine whether a predicate crime is, for example, a "theft offense." By contrast, § 16(b) requires a court to determine whether a predicate crime, *by its nature*, poses a certain risk. This linguistic distinction explains why the least of the acts criminalized inquiry is appropriate for specific federal generic offense cases, but the ordinary case inquiry is appropriate for § 16(b) cases. *See Rodriguez-Castellon*, 733 F.3d at 861 ("[A] court considering whether a state statute meets the definition of 'sexual abuse of a minor' must consider cases 'at the margins of the statute,' but a court performing an analysis of 'substantial risk' under § 16(b) may not do so." (quoting *Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1129 (9th Cir. 2012))); *In re Mario Francisco-Alonzo*, 26 I. & N. Dec. at 599−600.

19

to the "typical case"); *Van Don Nguyen*, 571 F.3d at 530 (looking to "the mainstream of prosecutions brought under the statute"); *see also Sykes v. United States*, 564 U.S. 1, 40 n.4 (2011) (Kagan, J., dissenting) (defining the ordinary case of a crime as the "most common form" of that crime). Therefore, in ascertaining the ordinary case of reckless second-degree aggravated assault, we will look to the conduct associated with the normal or usual commission of the crime.

There is little guidance as to how we should go about identifying that conduct. *See Johnson*, 135 S. Ct. at 2557. Indeed, during oral argument, neither advocate was able to articulate the ordinary case of reckless second-degree aggravated assault. "How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves? 'A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct?'" *Id.* (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc)). Although we ultimately conclude that the indeterminate nature of the ordinary case inquiry contributes to § 16(b)'s unconstitutionality, we must first undertake the analysis as best we can to determine whether Baptiste's 2009 Conviction was for a crime of violence. *See Egolf v. Witmer*, 526 F.3d 104, 109 (3d Cir. 2008) ("We have a longstanding practice of avoiding constitutional questions in cases where we can reach a decision upon other grounds.").

In the absence of any empirical analysis of convictions for reckless second-degree aggravated assault, we are limited to examining New Jersey case law to determine what conduct is associated with the ordinary case

20

of the crime. Our review of case law is complicated in this case because the statute of conviction at issue includes several crimes (an attempt crime and a completed crime phrased with several disjunctive mental states) and the conviction documents of defendants prosecuted under the statute often do not specify which crime in the statute the defendant was convicted of committing. *See United States v. Garcia-Jimenez*, 807 F.3d 1079, 1081 (9th Cir. 2015); *see, e.g.*, *State v. Watkins*, No. 12-02-0369, 2015 WL 9694386, at *2 (N.J. Super. Ct. App. Div. Jan. 4, 2016) (verdict sheet for second-degree aggravated assault did not differentiate mental states). This lack of specificity makes it impossible in many cases to determine whether a defendant was convicted of the crime at issue in this case—reckless second-degree aggravated assault—or the other crimes specified in the statute.[11]

However, based on our review of pertinent case law, we observe that there is a wide array of conduct for which a defendant can be convicted for reckless second-degree aggravated assault. For purposes of our analysis, we group this conduct into three categories: (1) conduct that itself constitutes an intentional use of force; (2) conduct that presents a substantial risk of the intentional use of force; and (3) conduct that presents no risk of the intentional use of force.

---

[11] Given the dearth of New Jersey cases that make clear a defendant was convicted of the recklessness crime in the statute, we are forced to depart from our typical practice and cite to unpublished New Jersey opinions.

### a) Intentional use of force

A defendant can be convicted for reckless second-degree aggravated assault if he intentionally uses force against a victim and is reckless as to whether that force will cause "serious bodily injury." *See State v. Jaramillo*, No. 04-01-0140, 2008 WL 3890655, at \*11 (N.J. Super. Ct. App. Div. Aug. 25, 2008) (per curiam) (noting that a jury was entitled to find the defendant guilty of reckless second-degree aggravated assault for punching the victim); *State v. Battle*, 507 A.2d 297, 299 (N.J. Super. Ct. App. Div. 1986) (observing that a thief's forceful snatching of a victim's purse, which leads to her serious bodily injury, could constitute reckless second-degree aggravated assault). A recent case from the New Jersey courts addressing the closely-related crime of reckless third-degree aggravated assault[12] is illustrative.

---

[12] We use the term "third-degree aggravated assault" here to refer to the crime defined at N.J. Stat. Ann. § 2C:12-1b(7) (West 2005). Reckless third-degree aggravated assault is in all material respects identical to reckless second-degree aggravated assault with the exception that reckless third-degree aggravated assault results in "significant bodily injury" as opposed to "serious bodily injury." *Compare* N.J. Stat. Ann. § 2C:12-1b(7) (West 2005) *with* N.J. Stat. Ann. § 2C:12-1b(1) (West 2005).

In *State v. Steffen*, No. 09-11-2753, 2012 WL 3155553, at *1–*2 (N.J. Super. Ct. App. Div. Aug. 6, 2012) (per curiam), the defendant was convicted of reckless third-degree aggravated assault after using a "choke slam" to subdue the victim. As a result of the choke slam, the victim suffered a hematoma and temporary loss of sight. *Id.* at *2. The trial court determined that the defendant had "acted 'recklessly under circumstances manifesting extreme indifference to the value of human life,'" *id.* at *1, and the reviewing court affirmed the trial court's verdict, *id.* at *2.

Such conduct, which involved choke slamming the victim, itself involves the intentional use of force and so clearly meets the requirements of § 16(b).[13] *See Jimenez-*

---

[13] In addition, there are examples of second-degree aggravated assault convictions in New Jersey for conduct clearly involving the intentional use of force for which it is unclear with what mental state the defendant was convicted of acting. As we alluded to above, in such cases, the defendant pleads guilty, or the judge or jury returns a verdict of guilty, to the general offense of causing serious bodily injury purposely or knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. *See, e.g.*, *Watkins*, 2015 WL 9694386, at *1–*2 (defendant kicked an elderly man and was convicted without designation of mental state); *State v. Fowlkes*, No. 05-09-1271, 2010 WL 86412, at *1–*3 (N.J. Super. Ct. App. Div. Jan. 12, 2010) (per curiam) (defendant punched victim and hit victim with a broom and was convicted without designation of mental state).

It stands to reason that some of these convictions, which involve the intentional use of force and do not

23

*Gonzalez v. Mukasey*, 548 F.3d 557, 561 (7th Cir. 2008) (examining cases holding that recklessness crimes are crimes of violence under § 16(b) as involving "*intentional conduct* exhibiting a *reckless* disregard to the likelihood of injury"); *Blake v. Gonzales*, 481 F.3d 152, 161 n.6 (2d Cir. 2007) (finding a crime to be a crime of violence under § 16(b) where, under one theory of violation, "the perpetrator intends *the conduct,* and . . . recklessness is the *mens rea* with respect to the likelihood of physical harm" (alteration in original) (internal quotation marks omitted)).

### b) Substantial risk of intentional use of force

A defendant can also be convicted for conduct that, while itself not constituting an intentional use of force, presents a substantial risk that he will intentionally use force. For example, in *State v. Colon*, 689 A.2d 1359, 1361−62 (N.J. Super. Ct. App. Div. 1997), the defendant's friend was being battered by a group of men outside a bar. The bar's bouncer testified that he had grabbed hold of one of the men and was pulling him off of the defendant's friend when that man was shot. *Id.* at 1361. The jury found that the defendant had shot the victim, but acquitted him of purposeful or knowing aggravated assault; instead, it convicted him only of reckless second-degree aggravated assault. *Id.* at 1362 n.3, 1364. Although several theories of the crime could have supported the jury's verdict, relevant

---

designate a mental state, are based on a reckless mental state whereby the defendant, as in *Steffen*, intentionally used force but was reckless as to the possibility of serious bodily injury.

24

for our purposes is the court's comment that the verdict could have been the result of a jury finding that the defendant "recklessly fired [his] weapon." *Id.* at 1364.

As we explained above, we determined in *Aguilar* that a reckless sexual assault is a crime of violence because there is a substantial risk that the defendant will encounter resistance from the victim and then decide to intentionally use force to "overcome" the victim. *See Aguilar*, 663 F.3d at 701−02. Similarly, in *Colon*, once the defendant recklessly fired his weapon and hit the victim, there was a substantial risk that the victim would fight back and that the defendant would then decide to intentionally fire his weapon (*i.e.*, intentionally use force against the victim). Although not a certainty, the reckless firing of the weapon created a substantial risk of that result, which is all that § 16(b) requires.[14]

---

[14] Although this analysis considers conduct and events taking place after the recklessness crime has technically been completed, it is consistent with our prior interpretations of the "in course of committing the offense" language in § 16(b). *See* 18 U.S.C. § 16(b) (defining a crime of violence as "a felony . . . that, by its nature, involves a substantial risk that physical force against the person or property of another may be used *in the course of committing the offense*" (emphasis added)).

For example, we observed in *Aguilar*, in dicta, that burglary is a crime of violence under § 16(b). *Aguilar*, 663 F.3d at 698; *see Leocal*, 543 U.S. at 10 (observing that burglary is the "classic example" of a crime of violence under § 16(b)). The crime of burglary—breaking and

25

entering a dwelling at night to commit a felony—is technically complete as soon as the defendant has entered the dwelling. However, we observed that burglary is a crime of violence under § 16(b) because "burglary creates a substantial risk that the burglar will have to use physical force to overcome the desire of home occupants to protect themselves and their property." *Aguilar*, 663 F.3d at 701. This risk only materializes after the defendant has entered the dwelling and thus *after* the crime of burglary has been completed. *See id.* (identifying the risk of the use of force as being "created by an unlawful entry into a victim's home"); *Henry v. Bureau of Immigration & Customs Enf't*, 493 F.3d 303, 310 (3d Cir. 2007) ("[T]he requisite elements of a burglary are complete once the burglar enters and possesses the necessary mental intent. However, the substantial risk that the burglar will use force comes from the possibility that the burglar will encounter another during the course of the burglary; it is irrelevant that the technical elements have already been accomplished."); *cf. Johnson*, 135 S. Ct. at 2557 ("[A] risk of injury arises . . . because the burglar might confront a resident in the home *after* breaking and entering.").

Similarly, we observed in *Ng v. Attorney General* that the use of interstate commerce facilities in the commission of a murder-for-hire is a crime of violence under § 16(b). *Ng v. Att'y Gen. of the U.S.*, 436 F.3d 392, 397 (3d Cir. 2006). That crime is technically complete after mere solicitation to commit a murder-for-hire and so "proscribes conduct that may never pose a risk of violence." *Id.* Yet we observed that it is a crime of violence under § 16(b) because, even if "some violations . . . will never

26

### c) No risk of intentional use of force

Finally, a defendant can be convicted for conduct that presents no risk that he will intentionally use force. Specifically, in accordance with Baptiste's suggested least culpable conduct, a defendant can be convicted for reckless second-degree aggravated assault for drunk driving manifesting extreme indifference to the value of human life and resulting in serious bodily injury to another. *See, e.g.*, *Kromphold*, 744 A.2d at 646; *Sweeney*, 2015 WL 6442334, at *1–*2. Common to such drunk driving cases is that the defendant did not intend to cause harm to the victim and so is not "actively employ[ing]" force in committing the crime. *Leocal*, 543 U.S. at 9; *see Oyebanji v. Gonzales*, 418 F.3d 260, 264 (3d Cir. 2005). Moreover, such conduct does not present a "risk that the reckless[] offender will step in and commit an *intentional* act of violence." *Tran*, 414 F.3d at 472−73.

*       *       *

Our task is to determine, based on the foregoing review of case law, what conduct is associated with the

----

culminate in . . . the commission of a murder[,] . . . the natural consequence of [the commission of the crime] is that physical force will be used upon another." *Id.* *But cf. United States v. Hull*, 456 F.3d 133, 140 (3d Cir. 2006) ("[M]ere possession of a pipe bomb holds no risk of the *intentional* use of force. . . . [T]he relevant inquiry is not whether possession makes it more likely that a violent crime will be committed, but instead whether there is a risk that in committing the offense of *possession*, force will be used.").

ordinary case of reckless second-degree aggravated assault. Unsurprisingly, the Attorney General urges us to focus on conduct in the first two categories and Baptiste urges us to focus on conduct in the third category. In the absence of any concrete guidance as to how to make this determination, *see Johnson*, 135 S. Ct. at 2557−58, we must rely on our common sense and judicial experience, *see Sonnenberg*, 628 F.3d at 366; *Rodriguez-Castellon*, 733 F.3d at 856.

We recognize that it is impossible in this case to determine with precision what specific conduct is associated with the ordinary case of the crime. The crime at issue in this case covers a wide array of conduct—more than, say, burglary. A defendant can be convicted of the crime for conduct as dissimilar as an intentional act of physical violence (first category of conduct) and drunk driving causing accidental injury (third category of conduct). With a crime that covers such a wide array of conduct, we begin with the common sense proposition that the conduct associated with the ordinary case of a conviction presumptively lies at or near the middle of the culpability spectrum[15]—here, the second category of conduct we have identified.

---

[15] We use the term "culpability spectrum" here to refer to conduct that, on one end of the spectrum, presents no risk of the intentional use of force (third category of conduct) and, on the other end of the spectrum, involves an intentional use of force (first category of conduct).

28

Baptiste's single factual scenario to the contrary in which there is no risk of the intentional use of force—a drunk driver—is not enough to overcome this presumption. We have seen nothing in our foregoing review of case law that persuades us that the normal or usual commission of the crime involves the actions of a drunk driver (third category of conduct). Rather, we view such conduct as being associated with a narrow subset of convictions and thus insufficient to render the crime categorically not a crime of violence under the ordinary case inquiry. *Cf. Van Don Nguyen*, 571 F.3d at 530 ("[A]n unsubstantiated risk of physical force in some small subset of cases is [in]sufficient to classify [an] offense as a 'crime of violence.'"). We reach the same conclusion with respect to the first category of conduct we have identified.

We therefore conclude that the conduct associated with the ordinary case of reckless second-degree aggravated assault lies somewhere within the second category of conduct we have identified, which falls within the definition of a crime of violence in § 16(b).[16] *See Johnson*, 135 S. Ct. at 2558 (referring to the ordinary case as a "judge-imagined

_____

[16] If this conclusion is unsatisfying, it is the result of the indeterminacy of the ordinary case inquiry, which requires us to determine what conduct is associated with the normal conviction of the crime despite the broad swath of disparate conduct it covers. *See Johnson*, 135 S. Ct. at 2559 ("How does common sense help a federal court discern where the 'ordinary case' of vehicular flight in Indiana lies along th[e] spectrum [of culpable conduct]?"). We address this indeterminacy in the next section. *See infra* section III.B.

abstraction"). Because we conclude that reckless second-degree aggravated assault does, in the ordinary case, present a substantial risk of the intentional use of force, reckless second-degree aggravated assault in New Jersey is categorically a crime of violence pursuant to § 16(b).

Given our conclusion that Baptiste was convicted of a crime of violence pursuant to § 16(b), we now turn to the constitutional question presented in this case—is § 16(b) void for vagueness under the Due Process Clause of the Fifth Amendment?

## B.  *Section 16(b) is void for vagueness under the Due Process Clause of the Fifth Amendment*

The Due Process Clause precludes the government from taking away a person's life, liberty, or property under a statute "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556. Baptiste argues that his 2009 Conviction was not for an aggravated felony because the incorporated definition of a crime of violence in 18 U.S.C. § 16(b) is unconstitutionally vague. [17]  Baptiste bases his argument on the Supreme

---

[17] The Attorney General wisely does not contest Baptiste's assertion that he has a right under the Fifth Amendment's Due Process Clause to bring a void for vagueness challenge to the definition of a crime of violence in § 16(b). *See Jordan v. De George*, 341 U.S. 223, 231 (1951) (considering whether the phrase "crime involving moral turpitude" was void for vagueness due to the "grave nature of deportation"); *Golicov v. Lynch*, --- F.3d ----, No. 16-9530, 2016 WL 4988012, at *2−*3 (10th Cir. Sept. 19,

30

Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the residual clause of the ACCA.

The ACCA provides for a sentence enhancement for certain defendants who have three or more prior convictions for a "violent felony." *Id.* at 2555. The Act defines "violent felony" as, inter alia, a crime that is "burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). The emphasized language is known as the "residual clause." As we explained above, prior to *Johnson*'s holding that the residual clause is unconstitutionally vague, courts assessing whether a crime fell within the residual clause were required to use the same

2016); *Shuti*, 828 F.3d at 446 ("[B]ecause deportation strips a non-citizen of his rights, statutes that impose this penalty are subject to vagueness challenges under the Fifth Amendment."); *Dimaya v. Lynch*, 803 F.3d 1110, 1112−14 & n.4 (9th Cir. 2015), *cert. granted*, --- S. Ct. ----, No. 15-1498, 2016 WL 3232911 (U.S. Sept. 29, 2016) (concluding that an alien "may bring a void for vagueness challenge to the definition of a 'crime of violence' in the INA" and collecting cases from other circuits permitting similar challenges). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (internal quotation marks omitted) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see, e.g.*, *Denis*, 633 F.3d at 218−19 (entertaining an alien's procedural due process challenge).

31

categorical approach that courts use in the § 16(b) context. *See supra* section III.A.2. Thus, in "[d]eciding whether the residual clause covers a crime," a court had to "picture the kind of conduct that the crime involves in 'the ordinary case,' and . . . judge whether that abstraction presents a serious potential risk of physical injury." *Johnson*, 135 S. Ct. at 2557 (quoting *James*, 550 U.S. at 208).

The majority in *Johnson* observed that two features of the residual clause "conspire[d] to make it unconstitutionally vague"—the ordinary case inquiry and the serious potential risk inquiry. *Id.* at 2557−58. First, the majority observed that there are many different conceptions of what the ordinary case of a crime involves. *Id.* For example, "does the ordinary instance of witness tampering involve offering a witness a bribe? Or threatening a witness with violence?" *Id.* at 2557. The majority concluded that "[t]he residual clause offers no reliable way to choose between . . . competing accounts of what [an] 'ordinary' [case] involves." *Id.* at 2558. Second, the majority observed that the clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* Thus, the majority concluded that the combination of "indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony . . . produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

After reaching this conclusion, the majority examined the residual clause precedents of both the Supreme Court and the Courts of Appeals and determined that "repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless

indeterminacy." *Id.* It then addressed several arguments penned by the dissent. First, it rejected as inconsistent with the Court's precedents the dissent's view that "a statute is void for vagueness only if it is vague in all its applications." *Id.* at 2561. Second, the majority dismissed the dissent's concern that the invalidation of the residual clause for vagueness would cast constitutional doubt over laws similar to the residual clause that use terms such as "substantial risk." *Id.* The majority reasoned that such laws do not link the phrase "substantial risk" to a "confusing list of examples," and, "[m]ore importantly . . . require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*." *Id.* Finally, the majority rejected the dissent's invitation to abandon the ordinary case inquiry and interpret the residual clause to "refer to the risk posed by the particular conduct in which the defendant engaged." *Id.* at 2561−62.

In addressing whether *Johnson* compels the invalidation of § 16(b), we do not write on a blank slate. The Sixth, Seventh, Ninth, and Tenth Circuits have considered the question and concluded that *Johnson* does render § 16(b) void for vagueness. *See Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016); *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *cert. granted*, --- S. Ct. ----, No. 15-1498, 2016 WL 3232911 (U.S. Sept. 29, 2016); *Golicov v. Lynch*, --- F.3d ----, No. 16-9530, 2016 WL 4988012 (10th Cir. Sept. 19, 2016). By contrast, the en banc Fifth Circuit has concluded that § 16(b) is not unconstitutionally vague after *Johnson*, and the Second and Eighth Circuits have concluded that 18 U.S.C. § 924(c)(3)(B), which contains

33

nearly identical language to § 16(b),[18] survives *Johnson*. *See United States v. Prickett*, --- F.3d ----, No. 15-3486, 2016 WL 5799691 (8th Cir. Oct. 5, 2016); *United States v. Gonzalez-Longoria*, 831 F.3d 670 (5th Cir. 2016) (en banc); *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016). We enter the fray with the benefit of these considered opinions on § 16(b)'s constitutionality.

The two features of the residual clause that the Supreme Court concluded "conspire[d] to make [the residual clause] unconstitutionally vague" were the ordinary case inquiry and the serious potential risk inquiry. *Johnson*, 135 S. Ct. at 2557−58; *see United States v. Calabretta*, 831 F.3d 128, 133 (3d Cir. 2016). Given that the ordinary case inquiry, as used in the § 16(b) context, is derived from the residual clause context, we can be certain that the ordinary case inquiry is identical in both contexts. As we described above, in the § 16(b) context, a court must ask "whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a [substantial risk of the intentional use of force]." *James*, 550 U.S. at 208 (emphasis added).

---

[18] Before the Sixth Circuit's decision in *Shuti* holding § 16(b) to be vague, a panel of the Sixth Circuit had concluded that § 924(c)(3)(B) was not unconstitutionally vague after *Johnson*. *See United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016). However, in *Shuti*, the Sixth Circuit distinguished *Taylor*, noting that "[u]nlike the ACCA and INA, which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury in the same proceeding." *Shuti*, 828 F.3d at 449.

Because § 16(b) "offers no reliable way to choose between . . . competing accounts of what" that "judge-imagined abstraction" of the crime involves, *Johnson*, 135 S. Ct. at 2558, the ordinary case inquiry is as indeterminate in the § 16(b) context as it was in the residual clause context. *See Golicov*, 2016 WL 4988012, at *6; *Shuti*, 828 F.3d at 447; *Vivas-Ceja*, 808 F.3d at 722−23; *Dimaya*, 803 F.3d at 1115−16.

This conclusion holds true for the second feature of each statute as well—the risk inquiry. Whereas the residual clause asks how much risk it takes for a crime to present a "serious potential risk" of physical injury, § 16(b) asks how much risk it takes for a crime to present a "substantial risk" of the intentional use of force. The phrases have two linguistic differences: § 16(b) replaces the residual clause's "serious" with the word "substantial" and replaces the residual clause's "potential risk" with "risk."

A "serious risk" is equally as vague as a "substantial risk." *See Golicov*, 2016 WL 4988012, at *6. To be sure, a "potential risk" encompasses more conduct than a simple "risk." *See James*, 550 U.S. at 207−08 ("[T]he combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a simple 'risk.'"). However, in our view, this minor linguistic distinction is insufficient to bring § 16(b) outside of the reasoning of *Johnson*. *See Vivas-Ceja*, 808 F.3d at 722; *Dimaya*, 803 F.3d at 1116 n.9. The critical feature of the "serious potential risk" inquiry that rendered it indeterminate in *Johnson* was not that the risk was "potential," but that the residual clause required the use of a vague "serious risk" inquiry. The majority confirmed as much when, in response to the dissent's suggestion that the

35

majority opinion would cast constitutional doubt on statutes using a "substantial risk" inquiry, it did not draw any vagueness distinction between the phrases based on the word "potential." *See Johnson*, 135 S. Ct. at 2561.

The Attorney General directs our attention to an additional linguistic distinction between the statutes that she views as meaningful. She argues that the scope of crimes that present a substantial risk *of the use of force* is narrower than the scope of crimes that presents a serious potential risk *of physical injury*. *See Prickett*, 2016 WL 5799691, at *2; *Gonzalez-Longoria*, 831 F.3d at 676; *Hill*, 832 F.3d at 148. This is so because there is undoubtedly a class of conduct that presents a risk that a victim will be injured without presenting a risk that force will intentionally be used against that victim. *See Leocal*, 543 U.S. at 10 n.7 (noting that § 16(b) "plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct"). One example of such conduct is arson with intent to destroy a building, which runs the risk of a victim being injured without any risk of the arsonist using intentional force against that victim. The Attorney General argues that the § 16(b) inquiry therefore "falls short of the wide-ranging thought experiment previously required by the [residual clause]." Resp't Br. 44 (internal quotation marks omitted) (quoting *United States v. Doe*, 145 F. Supp. 3d 167, 182 (E.D.N.Y. 2015)).

While the Attorney General is correct that fewer crimes fall within § 16(b) than within the residual clause, we do not view the scope of crimes covered by each provision as integral to the vagueness analysis. The Attorney General cannot point us to any language in *Johnson* that suggests otherwise because the Court's

36

vagueness holding in *Johnson* was focused on the "serious potential risk" inquiry required by the residual clause. *See Johnson*, 135 S. Ct. at 2558 ("[T]he residual clause leaves uncertainty about *how much risk it takes* for a crime to qualify as a violent felony. It is one thing to apply an imprecise *'serious potential risk' standard* to real-world facts; it is quite another to apply it to a judge-imagined abstraction." (emphasis added)); *Welch v. United States*, 136 S. Ct. 1257, 1262 (2016) ("The residual clause failed not because it adopted a 'serious potential risk' standard but because *applying that standard* under the categorical approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense." (emphasis added)). As such, we focus here in our vagueness analysis on the "substantial risk" inquiry required by § 16(b).

In applying those indeterminate risk inquiries, whether fewer or more cases fall within each respective statutory provision because of the modifiers "physical injury" and "use of force" does not affect the indeterminacy of the "serious potential risk" or "substantial risk" inquiries themselves. *See Welch*, 136 S. Ct. at 1272 (Thomas, J., dissenting) (observing that the residual clause was held to be vague because it requires courts to "judge whether [the ordinary case of a crime] presents a serious potential risk *of some result*" (emphasis added) (internal quotation marks omitted)). In short, the distinction the Attorney General draws between the two statutes is a distinction without a

difference within the reasoning of *Johnson*.[19] *See Shuti*, 828 F.3d at 448.

[19] The Fifth Circuit in *Gonzalez-Longoria* identified another linguistic distinction between the residual clause and the language of § 16(b), which contributed to its conclusion that § 16(b) is not unconstitutionally vague. It pointed to the requirement in § 16(b) "that the risk of physical force arise '*in the course of committing' the offense*" and observed that the § 16(b) inquiry is narrower than the residual clause inquiry because it "does not allow courts to consider conduct or events occurring after the crime is complete." *Gonzalez-Longoria*, 831 F.3d at 676 (emphasis added).

However, as we explained *supra* note 14, we have not always interpreted § 16(b) in such a restrictive manner as we have sometimes considered conduct occurring after the offense has technically been completed in our substantial risk inquiry. *See, e.g.*, *Henry*, 493 F.3d at 310; *see also Taylor*, 814 F.3d at 396 (White, J., concurring in part and dissenting in part) ("[T]he cases demonstrate that the phrase 'in the course of committing the offense' has not consistently been interpreted to exclude consideration of the risk of force after the offense has technically been completed."); *Dimaya*, 803 F.3d at 1118 (observing that the Ninth Circuit has similarly not interpreted § 16(b) in such a restrictive manner).

Moreover, the Supreme Court's observation that burglary is the "classic example," of a crime of violence within the meaning of § 16(b), *Leocal*, 543 U.S. at 10, suggests that it similarly does not so restrictively interpret

38

The Attorney General next asserts that § 16(b) does not fall within the reasoning in *Johnson* because, "unlike the list of exemplar crimes preceding the residual clause, . . . § 16(b) . . . do[es] not rely [on] a unique list of enumerated crimes to complicate the assessment of risk."[20] Resp't Br. 46; 18 U.S.C. § 924(e)(2)(B)(ii) (defining "violent felony" as a crime that is *"burglary, arson, or extortion, involves use of explosives*, or otherwise involves conduct that presents a serious potential risk of physical injury to

---

the "in the course of committing the offense" language in § 16(b). *See Henry*, 493 F.3d at 310. As the Court explained in *Johnson*, "[t]he act of . . . breaking and entering into someone's home does not, in and of itself, normally cause physical injury. Rather, risk of injury arises . . . because the burglar might confront a resident in the home *after* breaking and entering." *Johnson*, 135 S. Ct. at 2557.

[20] Section 4B1.2 of the Sentencing Guidelines previously contained a residual clause defining a "crime of violence" that was both identically worded to the residual clause in the ACCA and preceded by a list of exemplar crimes. Accordingly, we recently held the residual clause that was in § 4B1.2 to be void for vagueness after *Johnson*. *See Calabretta*, 831 F.3d at 137. In invalidating that residual clause, we noted that "we need not consider — and so leave for another day — whether a similar residual clause without an exemplary list of offenses would be subject to the same degree of due process concern that the Supreme Court identified in *Johnson*." *Id.* at 137 n.9. Today is that day. As we explain herein, we find § 16(b), which does not contain an exemplary list of offenses, to be unconstitutionally vague.

39

another" (emphasis added)); *see Prickett*, 2016 WL 5799691, at \*2; *Gonzalez-Longoria*, 831 F.3d at 677; *Hill*, 832 F.3d at 146. It is true that the majority in *Johnson* commented on the confusion engendered by the list of exemplar crimes preceding the residual clause. *See Johnson*, 135 S. Ct. at 2558, 2561. In responding to the dissent's argument that holding the residual clause unconstitutional would place numerous provisions of federal and state law that use terms like "substantial risk" in constitutional doubt, the majority retorted:

> Almost none of the cited laws links a phrase such as "substantial risk" to a confusing list of examples. "The phrase 'shades of red,' standing alone, does not generate confusion or unpredictability; but the phrase 'fire-engine red, light pink, maroon, *navy blue*, or colors that otherwise involve shades of red' assuredly does so."

*Id.* at 2561 (quoting *James*, 550 U.S. at 230 n.7 (Scalia, J., dissenting)).

However, in the very next sentence of the opinion, in response to the dissent's same argument, the majority stated:

> *More importantly*, almost all of the cited laws require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*. As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; "the

40

> law is full of instances where a man's fate
> depends on his estimating rightly . . . some
> matter of degree[.]" The residual clause,
> however, requires application of the "serious
> potential risk" standard to an idealized ordinary
> case of the crime.

*Id.* (first alteration in original) (first emphasis added) (internal citation omitted) (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)); *see Welch*, 136 S. Ct. at 1262.

We read *Johnson* to mean that the confusing list of examples preceding the residual clause only added to the residual clause's already-existing vagueness. Indeed, the language in *Johnson* by no means suggests that the list of examples was an integral component of the Court's finding that the residual clause was unconstitutionally vague. *See Golicov*, 2016 WL 4988012, at *7; *Shuti*, 828 F.3d at 448; *Dimaya*, 803 F.3d at 1117−18. Rather, as the Supreme Court made clear, the vagueness was the product of "[t]wo features of the residual clause"—the ordinary case inquiry and the risk inquiry—which, as we explained above, are present in the § 16(b) analysis as well.[21] *Johnson*, 135 S. Ct. at 2557; *see Vivas-Ceja*, 808 F.3d at 722−23.

---

[21] The Supreme Court's discussion in *Johnson* about its "repeated failures to craft a principled and objective standard out of the residual clause" does not change our analysis. *Johnson*, 135 S. Ct. at 2558. The Court's difficulty in interpreting the residual clause on multiple occasions merely provided further "evidence of vagueness," *Johnson*, 135 S. Ct. at 2558, that the Court had already found in the provision as a result of the "[t]wo features of

41

In fact, the lack of examples in § 16(b) introduces at least as much vagueness into the provision as the presence of confusing examples introduced into the residual clause. *See Dimaya*, 803 F.3d at 1118 n.13. "The specific offenses [preceding the residual clause] provide [a] baseline from which to measure whether other similar conduct 'otherwise . . . presents a serious potential risk of physical injury.'" *James*, 550 U.S. at 203 (third alteration in original). This baseline "provide[s] at least *some* guidance as to the sort of offenses Congress intended for the [residual clause] to cover." *Dimaya*, 803 F.3d at 1118 n.13. Such guidance is absent from § 16(b), which contains no example offenses. As a result, courts are left to undertake the § 16(b) analysis guided by nothing more than other judicial decisions that can lay no better claim to making sense of the indeterminacy of the analysis in a principled way than we have today. *See supra* section III.A.3.

---

the residual clause [that] conspire[d] to make it unconstitutionally vague," *id.* at 2557. Thus, that difficulty only served to "*confirm* [the residual clause's] hopeless indeterminacy." *Id.* at 2558 (emphasis added); *see Welch*, 136 S. Ct. at 1261−62 (distinguishing between the Court's difficulty in interpreting the residual clause and its vagueness analysis); *Shuti*, 828 F.3d at 450; *Vivas-Ceja*, 808 F.3d at 723. Moreover, the fact that the Supreme Court has only taken and decided one § 16(b) case, *see Leocal*, 543 U.S. at 1, and so has not experienced repeated failures in interpreting the provision, is probative only of the Court's composition of its docket—not absence of vagueness in the provision. *See Shuti*, 828 F.3d at 450; *Dimaya*, 803 F.3d at 1119.

*    *    *

Seemingly lost in these nuanced arguments about the scope and import of *Johnson* is the fact that the Supreme Court expressly anticipated the effect its holding would have on statutes with the language contained in § 16(b). In addressing the applicability of its holding to those statutes, the Court stated: "As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' *to real-world conduct*." *Johnson*, 135 S. Ct. at 2561 (emphasis added); *see Welch*, 136 S. Ct. at 1262. Section 16(b) is not such a law. Rather, § 16(b) calls for the exact analysis that the Court implied was unconstitutionally vague—the application of the "substantial risk" inquiry to the "*idealized ordinary case*" of a crime. *Johnson*, 135 S. Ct. at 2561 (emphasis added).

Thus, because the two inquiries under the residual clause that the Supreme Court found to be indeterminate— the ordinary case inquiry and the serious potential risk inquiry—are materially the same as the inquiries under § 16(b), § 16(b) is unconstitutionally vague. *See Golicov*, 2016 WL 4988012, at *6; *Shuti*, 828 F.3d at 441; *Vivas-Ceja*, 808 F.3d at 722−23; *Dimaya*, 803 F.3d at 1120. "By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as" a crime of violence, § 16(b) "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Johnson*, 135 S. Ct. at 2558.

Because § 16(b) is invalid, Baptiste's 2009 Conviction was not for an aggravated felony pursuant to 8

43

U.S.C. § 1227(a)(2)(A)(iii). However, since Baptiste does not contest that his 1978 Conviction was for a CIMT, he is still removable if his 2009 Conviction was for a CIMT. We now turn to that question.

**C.    *Baptiste's 2009 Conviction was for a CIMT***

An alien who is convicted of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct" after his admission to the United States is removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). Baptiste argues that the BIA erred in concluding that his 2009 Conviction was for a CIMT. In determining whether that conviction was for a CIMT, we must again follow the categorical approach. *Mehboob v. Att'y Gen. of the U.S.*, 549 F.3d 272, 275 (3d Cir. 2008). As with our crime of violence determination, the parties agree that, in undertaking the categorical approach, we should look to the recklessness crime in the statute of conviction. Thus, the question we must answer is whether recklessly causing serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life is categorically a CIMT.

In the CIMT context, our cases make clear that "we look to the elements of the statutory offense to ascertain the least culpable conduct hypothetically necessary to sustain a conviction under the statute." *Mahn*, 767 F.3d at 174 (internal quotation marks omitted) (quoting *Jean-Louis*, 582 F.3d at 471). Thus, the "possibility of conviction for non-turpitudinous conduct, however remote, is sufficient to avoid removal." *Id.* (internal quotation marks omitted) (quoting *Jean-Louis*, 582 F.3d at 471). Under these dictates, if there is any non-turpitudinous conduct that could

44

sustain a conviction for reckless second-degree aggravated assault, then that crime is categorically not a CIMT.

We have in the past defined morally turpitudinous conduct as "inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons." *Hernandez-Cruz v. Att'y Gen. of the U.S.*, 764 F.3d 281, 284 (3d Cir. 2014) (internal quotation marks omitted) (quoting *Knapik v. Ashcroft*, 384 F.3d 84, 89 (3d Cir. 2004)). Such conduct can "inhere in serious crimes committed recklessly, *i.e.*, with a conscious disregard of a substantial and unjustifiable risk that serious injury or death would follow." *Partyka v. Att'y Gen. of the U.S.*, 417 F.3d 408, 414 (3d Cir. 2005). Specifically, a recklessness crime can constitute a CIMT "if certain statutory aggravating factors are present." *Knapik*, 384 F.3d at 90; *see Idy v. Holder*, 674 F.3d 111, 118−19 (1st Cir. 2012) (recklessness coupled with "serious bodily injury" aggravating factor).

In *Knapik*, the BIA concluded that first-degree reckless endangerment under New York law was a CIMT. 384 F.3d at 93. New York law provided that a "person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." *Id.* at 89 (quoting N.Y. Penal Law § 120.25 (McKinney 2009)). We concluded that the BIA had acted reasonably in concluding that the New York crime constituted a CIMT. *Id.* at 90.

In so concluding, we observed that the New York statute at issue defined a recklessness crime that "contain[ed] aggravating factors, requiring that a defendant create a 'grave risk of death to another person' 'under

45

circumstances evincing a depraved indifference to human life.'" *Id.* We went on to observe that "the BIA could reasonably conclude that the elements of depravity, recklessness and grave risk of death, when considered together, implicate accepted rules of morality and the duties owed to society." *Id.* Although the recklessness crime defined in the statute of conviction in this case uses nominally different wording, it is in all material respects the same as the New York crime in *Knapik* that we found the BIA reasonably classified as morally turpitudinous.

First, both crimes are recklessness crimes and the mental state of recklessness is virtually identical under New York and New Jersey law. In New York, "[a] person acts recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk" that is "of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." N.Y. Penal Law § 15.05(3) (McKinney 2009). In New Jersey, "[a] person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk" that is "of such a nature and degree that . . . its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." N.J. Stat. Ann. § 2C:2-2b(3) (West 2005).

Second, the aggravating factors in both crimes are virtually identical. As to the first aggravating factor, the New York crime required that the defendant act "under circumstances evincing a depraved indifference to human life," N.Y. Penal Law § 120.25 (McKinney 2009), whereas the New Jersey crime at issue here requires that the defendant act "under circumstances manifesting extreme

46

indifference to the value of human life," N.J. Stat. Ann. § 2C:12-1b(1) (West 2005). There is no meaningful difference between those two phrases.

As to the second aggravating factor, the New York crime required that the defendant engage in conduct that "creates a grave risk of death to another person." N.Y. Penal Law § 120.25 (McKinney 2009). Similarly, the New Jersey crime at issue here requires conduct that results in "serious bodily injury." N.J. Stat. Ann. § 2C:12-1b(1) (West 2005). And the New Jersey courts have required that the defendant be aware that "his conduct [bears] a substantial risk that he will kill or seriously injure" others. *Colon*, 689 A.2d at 1364 (alteration in original). This risk must be so great that it constitutes a "probability as opposed to the mere possibility of serious bodily injury." *State v. Pigueiras*, 781 A.2d 1086, 1096 (N.J. Super. Ct. App. Div. 2001); *see Mahn*, 767 F.3d at 175 (concluding Pennsylvania's reckless endangerment crime is not a CIMT because it "only requires conduct that *may* put a person in danger"). Again, the aggravating factor in each crime is materially the same.

Thus, the New Jersey crime of reckless second-degree aggravated assault, which requires *recklessly* causing *serious bodily injury* to another *under circumstances manifesting extreme indifference to the value of human life*, falls squarely within our opinion in *Knapik* as a recklessness crime with two aggravating factors. Reckless second-degree aggravated assault is a CIMT.[22]

---

[22] In arguing for a contrary result, Baptiste points us to reported convictions for reckless second-degree

47

Because Baptiste's 2009 Conviction was for a CIMT,[23] the BIA correctly determined that, together with his 1978

aggravated assault for drunk driving and cites our statement in *Knapik* that "drunk driving . . . almost certainly does not involve moral turpitude." *Knapik*, 384 F.3d at 90. However, we were careful in *Knapik* not to foreclose the possibility that some egregious forms of drunk driving could involve moral turpitude. We were merely referring in that case to a "simple DUI offense," *id.* (internal quotation marks omitted) (quoting *In re Lopez-Meza*, 22 I. & N. Dec. 1188, 1194 (B.I.A. 1999)), and not drunk driving as prosecuted under the statute at issue here, which results in serious bodily injury to another person and evinces extreme indifference to the value of human life. Such egregious conduct is undoubtedly turpitudinous.

Baptiste also argues that our decision in *Partyka* compels the conclusion that his 2009 Conviction was not for a CIMT. However, in *Partyka*, we concluded that *negligently* assaulting a law enforcement officer was not a CIMT so the holding in that case is not applicable to the more culpable recklessness crime at issue here. *Partyka*, 417 F.3d at 416. Moreover, we expressly stated in *Partyka* that, if the petitioner was convicted of *recklessly* assaulting a law enforcement officer, we would agree with the BIA's conclusion that the crime involved moral turpitude. *Id.*

[23] Our holding today is limited to the New Jersey crime of reckless second-degree aggravated assault, which requires recklessly causing serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life. We express no opinion on whether an

48

Conviction, Baptiste is removable as an alien convicted of two or more CIMTs pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii).

## IV. CONCLUSION

For the foregoing reasons, we will grant the petition in part as it relates to the BIA's aggravated felony determination, deny the petition in part as it relates to the BIA's CIMT determination, and remand the case to the BIA for further proceedings.

---

assault crime involving "ordinary" recklessness would constitute a CIMT.